# United States Court of Appeals for the Federal Circuit

---

**JAMES E. WALKER,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7184

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-2634, Judge Bruce E. Kasold.

---

Decided: February 21, 2013

---

DAVID S. FORMAN, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for claimant-appellant. With him on the brief was ANITA BHUSHAN, of Atlanta, Georgia. Of counsel on the brief were LOUIS J. GEORGE and BARTON F. STICHMAN, National Veterans Legal Services Program, of Washington, DC. Of counsel was JESSICA H. ROARK, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Reston, Virginia.

ALEX P. HONTOS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and BRIAN D. GRIFFIN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

_____

Before DYK, CLEVENGER, and WALLACH, *Circuit Judges*.

CLEVENGER, Circuit Judge.

This case involves a claim for disability compensation filed by Julius E. Walker ("Mr. Walker") on April 7, 2007, for bilateral hearing loss. The Board of Veterans' Appeals ("Board") denied the claim on May 5, 2010. Pending appeal to the United States Court of Appeals for Veterans Claims ("Veterans Court"), the claimant died, and his son, Brig. Gen. James E. Walker ("Walker"), was substituted as a potential accrued benefits beneficiary. The Veterans Court affirmed the Board's denial of the claim for bilateral hearing loss, and Walker timely appealed to this court. We have jurisdiction under 38 U.S.C. § 7292 and for the reasons set forth below, we *affirm*.

I

Mr. Walker served in the United States Army Air Force from March of 1943 to November of 1945. His military Occupational Specialty was a four-engine airplane pilot, and during service he was a flight instructor. The Muskogee, Oklahoma Regional Office ("RO") denied the 2007 claim, and Mr. Walker appealed to the Board. The appeal included sworn statements from his son and wife that his hearing loss began in service and continued

throughout his life. In support of his appeal, Mr. Walker was eventually examined by a Department of Veterans Affairs audiologist on September 17, 2009. The audiologist was instructed to conduct an examination, and asked "[i]f hearing loss is diagnosed is it at least as likely as not due to his military service as a pilot. Please provide medical rational[e] for opinion provided."

Because Mr. Walker's service medical records were not available due to a fire in the facility housing the records, the examiner had only information obtained from Mr. Walker and his grandson, who related Mr. Walker's difficulty in hearing and his history of bilateral hearing loss. The examiner noted that noise exposure in service is conceded, and diagnosed Mr. Walker as suffering from bilateral hearing loss that would qualify Mr. Walker for compensation if he could establish service connection for the diagnosed condition. The examiner however concluded that "the veteran's hearing loss is less likely as not caused primarily by military service as a pilot." The examiner reasoned that Mr. Walker served 60-65 years ago, and that "[p]resbycusis (age-related hearing loss) secondary to the veteran's advanced age cannot be excluded as the primary etiology for the veteran's hearing loss." The examiner also noted that Mr. Walker was exposed to recreational noise by hunting game 7-8 times a year throughout his life without use of any hearing protection. Based on this examination report, the RO denied Mr. Walker's claim.

Mr. Walker appealed to the Board. The Board had the benefit of statements from Mr. Walker's wife and son to the effect that his hearing was normal upon entry into service, he suffered significant hearing loss in his time as a flight instructor, and his hearing slowly deteriorated in the years following his service. Before addressing the evidence in the case, the Board's opinion set out the legal criteria to be applied. In order to obtain disability compensation under 38 U.S.C. §§ 1110, 1131 and

38 C.F.R. § 3.303(a), Walker had to satisfy a three-element test: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service – the so-called 'nexus' requirement. This three-element test has been approved by this Court, *see Holton v. Shinseki*, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004)), and is applied by the Veterans Court, *see Arms v. West*, 12 Vet. App. 188 (1999). The Board also noted that "if the condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b) (2009)."

Applying the three-element test to the facts before it, the Board concluded that the trained audiologist's opinion was entitled to more weight than the information Mr. Walker and his grandson, and his wife and son had supplied. Age and recreational noise were seen as the more likely cause of Mr. Walker's diagnosed bilateral hearing loss. The Board thus concluded that Mr. Walker failed under the three-element test to establish service connection for his bilateral hearing loss. The Board's opinion did not indicate whether it also found Mr. Walker's claim insufficient under 38 C.F.R. § 3.303(b). Mr. Walker timely appealed to the Veterans Court, and as noted above, upon Mr. Walker's death, his son stepped into his shoes for purposes of pursuit of his claim for compensation for bilateral hearing loss.

## II

On appeal, Walker argued that the audiologist's examination was inadequate, for failure to consider and assess the "continuous long-standing symptomatology" shown by the lay statements of the wife and son, which were not before the examiner. Walker also argued that

the Board had not properly treated the lay evidence of continuity of symptomatology, and sought a remand to the Board for consideration of that evidence. The Veterans Court affirmed the Board's decision, also viewing the case through the prism of the familiar three-part test for service connection. The Veterans Court concluded that the Board had adequately weighed the lay statements by family members against the factors cited by the medical examiner, and agreed with the medical examiner and the Board that Mr. Walker's diagnosed hearing loss was more likely than not due to aging and recreational noise exposure, not to noise exposure during service. The Veterans Court's decision did not refer to the possibility that Walker could benefit from the provisions of 38 C.F.R. § 3.303(b) by way of continuity of symptomatology. Walker's request for a remand was denied on the ground that remand is unnecessary where it would result in additional burdens on the government with no benefit flowing to the veteran. Walker timely appealed the final decision of the Veterans Court. The Secretary of Veterans Affairs ("Secretary") opposes.

We have jurisdiction under 38 U.S.C. § 7292, which authorizes this court to interpret regulations issued by the Secretary. As will be explained below, this appeal requires us to interpret 38 C.F.R. § 3.303(b).

III

"Service connection" is a term of art that is used in two ways, depending on the context in which the term is expressed. The term applies to the ultimate entitlement to disability compensation, after a veteran has satisfied the three-element test or the test for entitlement to disability compensation for chronic diseases as set forth in 38 C.F.R. § 3.303(b). The term is also sometimes used to refer to the second element of the three-element test, namely that a disease or injury was incurred or aggravated while in service. The Secretary has promulgated

regulations on "Principles relating to service connection" in 38 C.F.R. § 3.303, and in § 3.303(a), stating general principles of service connection, the term is used in both senses. "Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability *was incurred coincident with service* in the Armed Forces, or if preexisting such service, was aggravated therein" (emphasis added). Subsection (a) also refers to "each disabling condition…for which [a veteran] seeks a service connection" and states that "[d]eterminations as to service connection will be based on review of the entire evidence of record." Satisfaction of the three-element test thus achieves service connection, in both senses, under § 3.303(a). As noted above, the RO, the Board, and the Veterans Court measured Walker's claim for compensation under the three-element test. We need not dwell further on § 3.303(a), however, because Walker on appeal has waived any claim to entitlement under subsection (a).

Walker's briefs on appeal, and his oral argument, reduce the appeal to a single question: whether Walker is entitled to a remand for consideration of service connection for his diagnosed bi-lateral hearing loss under 38 C.F.R. § 3.303(b). The answer to this question requires interpretation of the term "chronic disease" as it appears in § 3.303(b). Under Walker's interpretation of the term, he is entitled to the remand he requests. Under the Secretary's interpretation, the Veterans Court correctly denied the remand request. We thus turn to subsection (b) of § 3.303.

## IV

Subsection (b) reads as follows:

(b) *Chronicity and continuity.* With chronic disease shown as such in service (or within the presumptive period under § 3.307), so as to permit a

finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. This does not mean that any manifestation of joint pain, any abnormality of heart action or heart sounds, any urinary findings of casts, or any cough, in service will permit service connection of arthritis, disease of the heart, nephritis, or pulmonary disease, first shown as a clearcut clinical entity, at some later date. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim.

Unlike subsection (a), which is not limited to any specific condition, subsection (b) restricts itself to chronic diseases. Parsing through the language of the regulation, two situations are revealed. First, there is an explicit rule for when a chronic disease is "shown in service (or within the presumptive period under § 3.307)."[1]

---

[1] Section 3.307 deals with situations in which the veteran can show no evidence of a chronic disease during the

The regulation equates "shown in service" with a reliable diagnosis of the chronic disease while in service. Mere use of the word "chronic" does not suffice. For a showing in service, "there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time." The regulation is clear that any manifestation of a chronic disease, such as joint pain, etc., will not permit service connection for the chronic disease associated with the manifestation, in that instance, arthritis. To be "shown in service," the disease identity must be established and the diagnosis not be subject to legitimate question.

When a veteran satisfies the requirements for a chronic disease shown in service (or within the presumptive period under § 3.307), then all subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. Thus if a veteran can prove a chronic disease "shown in service," and there are no intercurrent causes, the manifestation of the chronic disease present at the time the veteran seeks benefits establishes service connection for the chronic disease. By treating all subsequent manifestations as service connected, the veteran is relieved of the requirement to show a causal relationship between the condition in service and the condition for which disability compensation is sought.

---

period of service, but can show a chronic disease that had become manifest to a degree of 10 percent or more within a limited time, depending on the particular identity of the chronic disease, after separation from service. Upon such showing, the chronic disease "will be considered to have been incurred in or aggravated by service," thus satisfying the second element of the three-element test. Walker does not seek the benefit of § 3.307 to establish that his bilateral hearing loss was incurred in service.

In short, there is no "nexus" requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease.

Subsection (b) provides a second route by which a veteran can establish service connection for a chronic disease. If evidence of a chronic condition is noted during service or during the presumptive period, but the chronic condition is not "shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned," *i.e.*, "when the fact of chronicity in service is not adequately supported," then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed.[2]

V

Walker contends that the Veterans Court failed to apply the correct law to his case when it denied him a re-

---

[2] In *Savage v. Gober*, 10 Vet. App. 488, 495-96 (1997), the Veterans Court concluded that § 3.303(b) "provid[ed] a substitute way of showing in-service incurrence and medical nexus" for purpose of showing the ultimate conclusion of service connection. In *Summers v. Gober*, 225 F.3d 1293, 1296 (Fed. Cir. 2000) we noted that "[t]his court has never affirmed the [Veterans Court's] understanding in *Savage* of the impact of 38 C.F.R. § 3.303(b) on the medical evidence of nexus requirement." Subsequently, in *Groves v. Peake*, 524 F.3d 1306, 1309-10 (Fed. Cir. 2008), at least for a chronic disease shown in service, we agreed that absent intercurrent causes § 3.303(b) supplies the medical nexus requirement.

mand to assess the evidence of continuity of symptomatology of his bilateral hearing loss. Although there is no evidence of record of a diagnosis of bilateral hearing loss during service, Walker argues that bilateral hearing loss was noted in service by his wife and son and he has presented evidence of continuity of symptomatology following discharge to link his currently diagnosed bilateral hearing loss with the hearing loss condition noted in service. Walker asserts that the term "chronic disease" in § 3.303(b) should be interpreted to apply to any disease that ordinarily would be considered chronic in the medical arts. Walker cites *Dorland's Ilustrated Med. Dictionary* 359 (32d ed. 2012): a chronic disease is a disease "persisting over a long period of time." Further, Walker cites the definition in the Secretary's Manual for Developing Claims for Service Connection for Chronic or Tropical Diseases, M21-1MR, Part IV, Subpart II, Chapter 1, Section H: "A chronic disease is a disease of prolonged duration, producing incapacitating symptoms of varying degree that may undergo remission, and that is seldom entirely cured with all residuals of damage being completely eradicated." Based on these definitions of chronic disease, Walker maintains that his father's bi-lateral hearing loss qualifies for assessment as a chronic disease under § 3.303(b).

The Secretary does not disagree with the ordinary definitions of "chronic disease" offered by Walker. The Secretary first points to 38 U.S.C. § 1011(3), where Congress specified that "[t]he term 'chronic disease' includes – [41 specifically named chronic diseases] and such other chronic diseases as the Secretary may add to this list." Further, the Secretary points to 38 C.F.R. § 3.309(a), which sets forth a specific list of chronic diseases that includes those identified in the statute. The Secretary emphasizes that bilateral hearing loss is not on the statutory list of chronic diseases, nor is it included in the list of chronic diseases set firth in § 3.309(a). The Secretary

thus concludes that "every 'chronic disease' is persistent or long-lasting, but not every persistent or long-lasting disease is a 'chronic disease'" for purposes of § 3.303(b)."

Instead, the Secretary interprets § 3.303(b) to have selected out of the complete range of potential chronic diseases, specific ones that qualify for assessment under § 3.303(b). The only chronic diseases that qualify for assessment under § 3.303(b), according to the Secretary, are those listed in § 3.309(a). Because bilateral hearing loss is undeniably not listed in § 3.309(a), the Secretary maintains that Walker cannot have access to § 3.303(b). The Secretary's interpretative analysis considers § 3.303(b) in the context of § 3.307(a) and § 3.309(a), in the light of the interlinkage of those regulations.

Section 3.307(a) deals with presumptive service connection. As noted above, a veteran is not denied service connection (in either of the two senses) simply because there is no evidence of record of any kind of a chronic disease while in service. Where a veteran can show manifestation of a chronic disease to a degree of 10 percent or more within stated time periods, § 3.307(a) presumes that the veteran incurred the disease in service, thus establishing service connection in the narrower sense. To achieve service connection in the broader, ultimate, sense, the veteran carries the presumption of service incurrence of a chronic disease back to § 3.303(b). If the chronic disease was "shown" (*i.e.* well diagnosed beyond question) in the presumptive period, § 3.303(b) eliminates the nexus requirement on the basis of the current manifestation of the chronic disease, unless intercurrent causes undermine the automatic connection between the in service showing and the present condition. The Secretary correctly notes that a veteran seeking ultimate service connection under § 3.303(b) on account of a presumptive service connection can only do so for the chronic diseases that are named in § 3.309(a), because

§ 3.307(a) states "[n]o condition other than one listed in § 3.309(a) will be considered chronic."

The same linkage exists between § 3.307(a) and § 3.309(a) in the situation where the veteran cannot establish a chronic disease "shown" in the presumptive period for purposes of § 3.303(b) but can point to a chronic condition that was noted in the presumptive period but the notation was insufficient to support a diagnosis beyond legitimate question. In that instance, the veteran can benefit from continuity of symptomatology to establish service connection in the ultimate sense, but only if his chronic disease is one listed in § 3.309(a).

The Secretary recognizes that there is no explicit cross reference to § 3.309(a) stated in § 3.303(b). Walker relies on the lack of such an express linkage to support his view that § 3.303(b) applies to any disease that would be considered "chronic" in medicine. But the absence of a direct linkage, if dispositive, would leave § 3.303(b) standing as a regulation that treats veterans differently, depending on the point in time that their chronic diseases were "shown" or "noted." Under Walker's interpretation of "chronic disease" a veteran whose chronic disease is either shown or noted in service would benefit from § 3.303(b) so long as his disease met a medical definition of "chronic," but a veteran whose chronic disease was shown or noted only in the presumptive period (in the absence of in-service records) would benefit from § 3.303(b) only if his chronic disease is listed in § 3.309(a). The Secretary argues that such difference in treatment has no reason, and Walker has pointed to none. In order to treat all veterans equally, the Secretary interprets § 3.303(b) as implicitly constrained by § 3.309(a) in all chronic disease cases. We think the Secretary's interpretation is reasonable. The absence of an explicit cross reference to § 3.309(a) in § 3.303(b) neither undermines the Secretary's case nor makes Walker's case. Instead, the absence of the cross reference, given the clear linkage

of § 3.307(a) and § 3.309(a) to § 3.303, creates ambiguity as to whether § 3.309(a) constrains the application of § 3.303(b) in all, or only some, chronic disease cases.

The Secretary reads § 3.303(b) to provide an alternative path to satisfaction of the standard three-element test for entitlement to disability compensation, but only for a limited number of identified chronic diseases. For other diseases that might be considered chronic, a veteran must pursue his claim through § 3.303(a), where medical nexus of a relationship between the condition in service and the present condition is required.

Even though § 3.303(b) does not contain a specific cross reference to § 3.309(a), we think a harmonious reading of §§ 3.303(b), 3.307(a) and 3.309(a) supports an implicit cross reference to § 3.309(a) in § 3.303(b). We are thus persuaded that the Secretary's interpretation of the regulation is correct. [3]

For the reasons explained above, we conclude that properly interpreted, and consistent with the Secretary's interpretation, § 3.303(b) is constrained by § 3.309(a), regardless of the point in time when a veteran's chronic disease is either shown or noted, in that the regulation is only available to establish service connection for the

---

[3] The Secretary advises us that he disagrees with *Savage v. Gober* and other Veterans Court decisions in cases that have extended § 3.303(b), in reliance on *Savage v. Gober*, beyond the list of chronic diseases found in § 3.309(a). For example, the Veterans Court gave the benefit of §3.303(b) to a claim for psoriasis in *Kent v. Nicholson*, 20 Vet. App. 1 (2006), and to a claim for varicose veins in *Barr v. Nicholson*, 21 Vet. App. 303 (2007), even though neither condition is named as a chronic disease in § 3.309(a).

specific chronic diseases listed in § 3.309(a).[4]  We also agree with the Secretary's view that diseases that would be considered "chronic" in a medical sense, but which are not listed in § 3.309(a), may qualify for service connection under the three-element test under § 3.303(a).  The primary difference between a chronic disease that qualifies for § 3.303(b) analysis, and one that must be tested under § 3.303(a), is that the latter must satisfy the "nexus" requirement of the three-element test, whereas the former benefits from presumptive service connection (absent intercurrent causes) or service connection via continuity of symptomatology.

In addition to arguing that the continuity of symptomatology avenue to service connection under §3.303(b) should be available for chronic diseases not enumerated in the statute or in the only regulation that lists named chronic diseases, Walker makes a broader argument that continuity of symptomatology is not even restricted to chronic diseases, but instead is available to gain service connection for any non-chronic disease or injury.

Walker grounds this broader argument on the following language in § 3.303(b): "Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legit-

---

[4] The question of whether and to what extent § 3.303(b) is constrained by § 3.309(a) is new to this court. This question has not arisen for adjudication in the limited number of our cases that have cited § 3.303(b). In one case, in dictum, we suggested that § 3.303(b) is not so constrained. *See Groves v. Peake*, 524 F.3d 1306, 1309 n.1 (Fed. Cir. 2008). That suggestion is incorrect, and the decisions of the Veterans Court that have extended continuity of symptomatology under § 3.303(b) to chronic diseases not enumerated in § 3.309(a) are hereby abrogated.

imately questioned." Walker also points to language in opinions of the Veterans Court, including *Savage v. Gober*, *supra*, stating generally that continuity of symptomatology is an alternative way to establish service connection. Walker further points to dictum in our cases suggesting that continuity of symptomatology is not restricted to establishing service connection for chronic diseases. *See*, *Groves v. Peake*, 524 F.3d 1306, 1309 n.1 (Fed. Cir. 2008); *Szemraj v. Principi*, 357 F.3d 1370, 1376 n.2 (Fed. Cir. 2004).

We first address Walker's reliance of the language of the regulation to support his broader claim. Section 3.303(b) is addressed to "Chronicity and continuity." The only kind of disease mentioned in the regulation is chronic disease. The regulation, as parsed above, refers to chronic diseases that are either "shown in service," meaning clearly diagnosed beyond legitimate question, or not so shown in service. When a "condition noted in service" is not sufficient to warrant the conclusion that the chronic disease is "shown to be chronic" in service, continuity of symptomatology may suffice to establish that the veteran incurred a chronic disease in service. The natural reading of the "condition" noted in service is a condition indicative of a chronic disease, but not sufficiently indicative to demonstrate that the chronic disease is "shown to be chronic." Nothing in § 3.303(b) suggests that the regulation would have any effect beyond affording an alternative route for proving service connection for chronic diseases. The clear purpose of the regulation is to relax the requirements of § 3.303(a) for establishing service connection for certain chronic diseases. Walker's argument that § 3.303(b) applies to every disease or condition would undermine the evidentiary requirement for satisfaction of the third, or nexus, step in the three-element test under § 3.303(a).

The regulatory history predating § 3.303(b) indicates that continuity of symptomatology is an evidentiary tool

to aid in evaluation of a chronic disease in service. Sections 3.303 and 3.307 derive in substantial part from former 38 C.F.R. § 3.80 (1956), which in turn derives from another regulation, R. & P. R. 1080(A), that incorporated continuity of symptomatology in 1947. R. & P. R. 1080(A) provided:

> When the etiological identity is perfect . . . there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service is not in fact shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity during service is not, in the opinion of the adjudicating agency, adequately supported, then there may be reason to require some showing of continuity after discharge to support the claim.

*See also* 38 C.F.R. § 3.80 (1956) (containing similar language). This regulatory history demonstrates that the same language in § 3.303(b) to which Walker points has been in the operative regulations for service connection for chronic diseases since at least 1947. The correct understanding of the "condition noted during service" is that the condition is one that is indicative of but not dispositive of a chronic disease.

We thus reject Walker's broader argument that continuity of symptomatology in § 3.303(b) has any role other than to afford an alternative route to service connection for specific chronic diseases. Suggestions or holdings to the contrary in any decisions of the Veterans Court, and dictum to the contrary in our precedent, are incorrect and of no effect.

The Secretary is free to amend § 3.309(a) if he determines that chronic diseases beyond those currently listed should benefit from the application of § 3.303(b). *See* 38 U.S.C. § 1101(3). Indeed, during supplemental

briefing in this case, the court was informed that the Secretary is currently considering a substantial revision of his regulations concerning service connection for disability compensation.

## VI

Because Walker seeks compensation for a condition that is not listed as a chronic disease in § 3.309(a), his claim cannot be processed under § 3.303(b).[5]   For that reason, it was not error for the Veterans Court to deny Walker's request for a remand to the Board to conduct a § 3.303(b) assessment of the facts of record.   Walker's claim for relief under § 3.303(a) was judged against him by the Board and the Veterans Court, and he limited his appeal to his chances under § 3.303(b).   For the reasons set forth above, we *affirm* the final decision of the Veterans Court.

**AFFIRMED**

Costs

No costs.

---

[5] Under *Savage v. Gober*, and its progeny, cases with which the Secretary has expressed disagreement, the continuity of symptomatology test requires not only showing the continuity, but showing a medical nexus between the current condition on which the claim is staked and the continuity of symptomatology. *Savage v. Gober*, 10 Vet. App. at 498.   We do not opine on how § 3.303(b) operates in practice, and we emphasize that the only issue regarding § 3.303(b) on which we rule today is that the regulation benefits only chronic diseases listed in § 3.309(a).