Citation Nr: 1508821 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 10-13 762A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for a heart disorder.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Van Wambeke, Counsel



INTRODUCTION

The Veteran served on active duty from October 1, 1974, to October 31, 1974. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which denied the claim. 

The Veteran presented testimony at a videoconference hearing before the undersigned Veterans Law Judge in March 2012. A transcript is of record. The Board remanded the claim in January 2014 and August 2014 for additional development. 

The current record before the Board consists entirely of electronic files known as Virtual VA and the Veterans Benefits Management System (VBMS). 


FINDING OF FACT

The Veteran's heart disorder, diagnosed as dysplastic pulmonic valve, is considered a developmental or congenital disorder and not a disability for which service connection may be granted; there is no evidence that the Veteran has a current disability (to include coronary artery disease) that resulted from a disease or injury superimposed on this congenital defect during service.


CONCLUSION OF LAW

The criteria for service connection for a heart disorder have not been met. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

The notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Board finds that the duty to notify was satisfied by a letter sent to the Veteran in February 2009 with regard to the claim for service connection for a heart disorder. The letter addressed all of the notice elements and was sent prior to the initial unfavorable decision by the AOJ in June 2009. 

The duty to assist was also met in this case. The service treatment records are in the claims file and all pertinent VA and private treatment records have been obtained and associated with the file. There was also substantial compliance with the Board's January 2014 and August 2014 remand instructions, as additional VA treatment records were obtained; records were requested and obtained from the Social Security Administration; unsuccessful efforts were made to obtain a March 10, 2009, stress test conducted at Hickory Cardiology Associates; a VA examination was obtained in March 2014; and a VA opinion was obtained in October 2014. See D'Aries v. Peake, 22 Vet. App. 97 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA opinion obtained in this case in October 2014 is adequate, as it is predicated on a full reading of the private and VA medical records in the Veteran's claims file; it considers all of the pertinent evidence of record and the statements of the appellant; and the examiner provided a complete rationale for the opinion stated, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c) (4). 

All known and available records relevant to the issue on appeal have been obtained and associated with the electronic files; and the Veteran has not contended otherwise. As VA has substantially complied with the notice and assistance requirements, the Veteran is not prejudiced by a decision on the claim at this time.

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009); cf. Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)). In many cases, medical evidence is required to meet the requirement that the evidence be "competent." However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr, 21 Vet. App. at 309.

Service connection for certain chronic diseases, to include endocarditis, may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). The term "chronic disease" refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101(3); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Where a chronic disease under 3.309(a) is "shown as such in service" ("meaning clearly diagnosed beyond legitimate question" Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), or in the presumptive period so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). In cases where a chronic disease is "shown as such in service," the Veteran is "relieved of the requirement to show a causal relationship between the condition in service and the condition for which service connected disability compensation is sought." Walker, 708 F.3d at 1336 (Fed. Cir. 2013). Instead, service connection may be granted for subsequent manifestations of the same chronic disease without any evidence of link or connection between the chronic disease shown in service and manifestations of the same disease at a later time. In other words, "there is no 'nexus' requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease." Id.

If evidence of a chronic condition is noted during service or during the presumptive period, but the chronic condition is not "shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned," i.e., "when the fact of chronicity in service is not adequately supported," then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed." Id. 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.

The Veteran seeks service connection for a heart disorder. He has specifically claimed a pin hole in his heart that has opened up. See February 2009 VA Form 21-526. The Veteran asserts that this pin hole was discovered in 1974 during service. See March 2009 VA Form 21-4138. He contends that he had no problems prior to service. See June 2009 VA Form 21-4138; March 2012 hearing transcript. 

Every Veteran shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities or disorders noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111. The application of the presumption of soundness applies only when a disease or injury not noted upon entry to service manifests in service, and a question arises as to whether it preexisted service. See Gilbert v. Shinseki, 26 Vet. App. 48 (2012).

There were no cardiovascular defects, infirmities or disorders noted at the time of the Veteran's entry into active duty. See September 1974 reports of medical history and examination. The Veteran was seen by cardiology on October 4, 1974, with complaint of chest pain and dyspnea on exertion (DOE). A history of acute rheumatic fever (ARF) was noted. See clinical record. The Veteran underwent an electrocardiogram (EKG) on October 6, 1974, which was within normal limits. When seen by internal medicine on October 7, 1974, the Veteran reported exercise intolerance from early childhood and possible ARF in the fourth grade was noted, though the details of the illness were not clear. The Veteran reported developing chest pain and DOE during physical training. Following physical examination and review of the EKG, the impression was dysplastic pulmonary valve, symptomatic. The examiner suspected it was congenital rather than secondary to ARF. See clinical record. A medical board was conducted on October 24, 1974; following physical examination, the impression was dysplastic pulmonic valve. It was determined that this existed prior to the Veteran's entry into service and that it had not been aggravated by service. It was also noted that this was a nonacceptable defect and that the medical board recommended separation from service. See also Medical Board Report Cover Sheet; Medical Board Statement of Patient. 

Service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin if the evidence as a whole establishes that the familial conditions in question were incurred or aggravated during service. VAOPGCPREC 82-90 (July 18, 1990); see also VAOGC 8-88 (Sept. 29, 1988) (reissued as VAOPGCPREC 67-90 (July 18, 1990) (noting that diseases of hereditary origin can be incurred or aggravated in service if their symptomatology did not manifest itself until after entry on duty and reasoning that the mere genetic or other familial predisposition to develop the symptoms, even if the individual is almost certain to develop the condition at some time in his or her lifetime, does not constitute having the disease). With regard to congenital or developmental defects, service connection may not be granted for a defect but may be granted for disability which is shown to have resulted from a defect which was subject to a superimposed disease or injury during service. VAOPGCPREC 82-90 (July 18, 1990).

The Board sought a VA examination in January 2014 in order to identify all disorders of the heart and to determine whether each diagnosis had its onset prior to service, during military service in October 1974, or after service. For those disorders that had their onset prior to service, the examiner was to indicate whether it was a congenital or developmental defect versus a disease. If a disease, the examiner was to provide an opinion as to whether there was any factual evidence to support a conclusion that it underwent an identifiable permanent increase in severity during service that was beyond its natural progression. If a congenital or developmental defect, the examiner was to provide an opinion as to whether it was subject to a superimposed disease or injury during service, and if so, to describe the resultant disability. For any disorder that had its onset after service, the examiner was asked to provide an opinion as to whether it is at least as likely as not that the disorder is related to any in-service disease, event, or injury, including the findings made in the October 1974 service treatment records.

The Veteran underwent a heart conditions Disability Benefits Questionnaire (DBQ) in March 2014. He was diagnosed with valvular heart disease and it appears from later notations made by the examiner that this diagnosis includes congenital pulmonic disease and acquired non obstructive (non ischemic) heart disease. It was the examiner's opinion that the Veteran's non-obstructive coronary artery disease (CAD) (diagnosed condition after service) was not caused by or a result of the dysplastic pulmonic valve. The rationale was that the Veteran's CAD is an unrelated, acquired condition to his diagnosed pulmonic condition; that the Veteran's diagnosed pulmonic disorder is not related to any in-service disease, event or injury, including the findings in October 1974; that the Veteran was diagnosed with the condition only days after entering and said condition is congenital and not aggravated by service; that the congenital condition could not have been caused by or aggravated beyond natural progression in such a short amount of time; and that the in-service condition is a defect not a disease therefore no other comment is necessary.

The Board remanded the claim in August 2014 after determining that the March 2014 VA examiner had not adequately addressed the questions posed by the Board in its January 2014 remand instructions, and because the rationale employed by the VA examiner was confusing. Given that determination, the Board will not rely on the diagnoses rendered, or opinion provided, by the March 2014 VA examiner.

An opinion was obtained from a cardiologist in October 2014, as instructed by the Board in its August 2014 remand. The cardiologist identified "unconfirmed dysplastic pulmonic valve by physical exam 1974" as a current disorder of the heart, while also noting that the Veteran had acute rheumatic fever when he was 9 years old (missed school for 2-3 months). The essence of the cardiologist's report was that research on pulmonic stenosis indicated that nearly all cases of valvular pulmonic stenosis were congenital in origin; that the dysplastic pulmonic valve was a congenital defect that existed prior to the Veteran's military service; and that the Veteran did not have coronary artery disease (a determination based on a December 2008 stress test and a March 2009 cardiac catheterization, which showed normal coronary arteries, normal left ventricular (LV) systolic function, and an ejection fraction (EF) of 65 percent). In only diagnosing"unconfirmed dysplastic pulmonic valve by physical exam 1974" and making clear that the Veteran did not have coronary artery disease, the examiner effectively answered the question as to whether any congenital defect was subject to a superimposed disease or injury during service with resultant disability in the negative. 

Given the determinations of the cardiologist who provided the October 2014 opinion that the Veteran's dysplastic pulmonic valve was a congenital defect and that the Veteran did not have a current disability (to include coronary artery disease) that resulted from a disease or injury superimposed on this congenital defect during service, and in light of the VA regulation noted above that provides that congenital or development defects are not disabilities for which service connection may be granted, service connection is not warranted and the claim for service connection for a heart disorder must be denied. 38 C.F.R. § 3.303(c) (2014). As the preponderance of the evidence is against the claim of entitlement to service connection for a heart disorder, the statutory provisions regarding resolution of reasonable doubt are not applicable. 38 U.S.C.A. § 5107(b). 


ORDER

Service connection for a heart disorder is denied. 



____________________________________________
KATHLEEN K. GALLAGHER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs