﻿Citation Nr: 18104737
Decision Date: 05/23/18 Archive Date: 05/22/18

DOCKET NO. 14-25 151
DATE: May 23, 2018
ORDER
The claim of entitlement to service connection for tinnitus is granted.
REMANDED
The claim of entitlement to service connection for a left middle finger condition is remanded.
The claim of entitlement to service connection for pseudofolliculitis barbae (PFB) is remanded.
The claim of entitlement to an initial evaluation in excess of 10 percent for a right knee sprain is remanded.
FINDING OF FACT
The Veteran’s tinnitus was incurred in active duty service.
CONCLUSION OF LAW
The criteria for service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303(a) (2017).
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran had honorable active duty service with the United States Navy from November 1996 to January 2012.
1. The claim of entitlement to service connection for tinnitus
The Veteran contends that he is entitled to service connection for tinnitus.
Generally, service connection will be granted for a disability resulting from an injury or disease caused or aggravated by service. 38 U.S.C. §§ 1110. A grant of service connection for a disability requires: (1) a present disability or persistent or recurrent symptoms of a disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (“nexus”) between the present disability and the in-service event, injury, or disease. 38 C.F.R. § 3.303; see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board’s analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim on appeal. 
In the Veteran’s March 2012 VA examination, he reported an onset of tinnitus in approximately 2007 while on active duty. The examiner determined that, as tinnitus was isolated to the right ear and acoustic reflex results from the right ear were absent with mild difference in the pure tone averages of the ears, then it was less likely than not that the Veteran’s tinnitus was related to noise exposure. In the Veteran’s July 2014 Substantive Appeal, he again reports an onset of tinnitus during active duty service. He noted that he constantly worked on the flight deck and was exposed to high noise areas. He reported first noticing symptoms around 2008 while stationed in Maryland, and the symptoms have been ongoing since. 
The evidence of record reflects consistent reports by the Veteran that his tinnitus began during active duty service, and continued after discharge. For VA purposes, tinnitus has been specifically found to be a disorder with symptoms that can be identified through lay observation alone. See Charles v. Principi, 16 Vet. App. 370 (2002). If a veteran reports ringing in his or her ears, then a diagnosis of tinnitus is generally applied without further examination. In addition, since the diagnosis of tinnitus is so heavily reliant upon lay statements, the etiology of the disorder is similarly reliant upon them. The date that a veteran reports that the tinnitus symptoms began is generally accepted as the date that the disorder began, without further examination. Thus, while service connection for tinnitus requires a medical diagnosis of tinnitus and a medical nexus relating the diagnosis to military service, lay testimony plays an unusually important role in these determinations.
The Board concludes that the Veteran’s tinnitus was incurred in active duty service. The Veteran has consistently reported a ringing in his ears that began during active duty after working constantly on flight decks. The Veteran is competent to testify as to onset of a condition such a tinnitus, and did so repeatedly through the record. As such, the Board may place more probative weight on the Veteran’s statement regarding onset than the opinion of the VA examiner did not address the Veteran’s statement that tinnitus started during active duty. As the evidence of record stands in relative equipoise, the benefit of the doubt is resolved in favor of the Veteran. Service connection for tinnitus is warranted.
REASONS FOR REMAND
1. The claim of entitlement to service connection for a left middle finger condition is remanded.
The Veteran contends that the March 2012 VA examination assessing his left middle finger injury incorrectly reported his symptoms. The Veteran’s service treatment records reflect a “crushing injury” to the left middle finger in December 1997. The March 2012 VA examination did not diagnose a residual disability pertaining to the Veteran’s left middle finger. The examiner noted a previous injury in service, but stated that the Veteran did not experience any symptoms as residuals of the injury. In the Veteran’s July 2014 Substantive Appeal, he stated that, contrary to the assertions of the previous examination report, he experienced loss of sensation, numbness, and an “occasional vibrating feeling” in the finger. Additionally, the Federal Circuit has also held that the term “disability” as used in 38 U.S.C. 1110 “refers to the functional impairment of earning capacity, not the underlying cause of said disability,” and held that “pain alone can serve as a functional impairment and therefore qualify as a disability.” Saunders v. Wilkie, No. 2017-1466, 2018 U.S. App. LEXIS 8467 (Fed. Cir. Apr. 3, 2018). If VA undertakes the effort to provide the Veteran with a medical examination, it must ensure that such exam is an adequate one. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). As the March 2012 VA examination report did not note or consider the Veteran’s lay reports of symptomatology associated with his in-service injury, a new examination is necessary on remand to provide a more thorough etiological opinion.
2. The claim of entitlement to service connection for pseudofolliculitis barbae (PFB) is remanded.
Similarly, the March 2012 VA examination to assess the etiology of the Veteran’s PFB determined that there was no present disability for which a nexus opinion may be rendered. The examiner noted the previous diagnosis of PFB in 1997, but stated that the condition had since resolved. The Veteran reported at the time of examination that he experienced bumps on his face and neck after shaving. In May 2012, the Veteran submitted photographs of what he contends are marks associated with PFB. In his July 2014 Substantive Appeal, he reported that PFB causes daily irritation, redness, bumps and inflammation. He reported continuing to experience the issues related to his PFB during active duty to present day. Furthermore, service treatment records, shortly before his separation from service, continue to reflect a diagnosis of PFB. see also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that evidence of a recent diagnosis of a disability prior to a claim for benefits based on that disability, is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency). Accordingly, a new VA examination is necessary to address the additional evidence of record, to include lay statements and photographic evidence. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 
3. The claim of entitlement to an initial evaluation in excess of 10 percent for a right knee sprain is remanded.
Finally, the Veteran contends that the VA examinations of record did not adequately reflect the severity of his right knee disability. In July 2014, the Veteran reported that he experienced pain, and limitation of flexion and extension in his right knee. He reported that repetitive movement causes pain, and his knee shows some instability in the joint. The Veteran’s reports indicate that there is some functional limitation, particularly as using stairs reportedly exacerbates his knee condition, and impacts his performance and efficiency in the workplace.
The most recent VA examination in October 2017 reported nearly full range of motion without evidence of pain on examination. The Veteran stated that flare ups of the right knee involved both pain and swelling. The examiner reported that the Veteran was experiencing a flare up during the examination, but did not note swelling or pain on examination. In sum, the examination report contradicts the lay testimony of the Veteran regarding observable symptomatology, which he is competent to report. As there is no explanation provided for these contrary findings, a new examination is necessary on remand in order to provide a more thorough assessment of the Veteran’s right knee disability. Competent reports of observable symptomatology must be considered when assessing the overall severity of a disability. As such, a new VA examination is warranted to more accurately assess the severity of the Veteran’s right knee disability. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 
The matters are REMANDED for the following action:
1. Contact the Veteran and his representative in order to identify any outstanding non-VA treatment records regarding the issues on appeal. If non-VA providers are identified, obtain releases for those records. Make all reasonable attempts to obtain the non-VA treatment records and associate them with the claims file. If such records cannot be obtained, inform the Veteran and his representative, and afford an opportunity for him to provide these outstanding records.
2. Obtain any relevant, outstanding VA treatment records that are not already associated with the claims file. If no records are available, the claims folder must indicate this fact and the Veteran should be notified in accordance with 38 C.F.R. § 3.159 (e). All attempts to contact the Veteran should be documented in the record.
3. After the aforementioned development is complete, schedule the Veteran for a VA examination to assess his claim of entitlement to service connection for PFB. A complete copy of the claims file must be made available to the examiner. The examiner must consider the Veteran’s lay reports of observable symptomatology. The examiner must also take a history regarding the symptoms from the Veteran. After a thorough review of the medical and lay evidence of record, the examiner should address the following:
(a.) List any and all skin conditions with which the Veteran is presently diagnosed, including whether he has a present diagnosis of PFB. The examiner should comment on the records in service that noted a diagnosis of PFB. 
(b.) For each skin condition, is it at least as likely as not (i.e. a probability of 50 percent or more) that the skin condition had its onset during active service or within one year of separation from service, or, otherwise resulted from active military service?
The examiner should provide a complete rationale for all opinions provided. 
4. After the aforementioned development is complete, schedule the Veteran for a VA examination to assess his claim of entitlement to service connection for a left middle finger condition. A complete copy of the claims file must be made available to the examiner. The examiner must consider the Veteran’s lay reports of observable symptomatology. The examiner must also take a history regarding the symptoms from the Veteran. After a thorough review of the medical and lay evidence of record, the examiner should address the following:
(a.) clarify whether the Veteran has any diagnosed left middle finger disorder.
(b.) if there is no diagnosis, specify if any subjective symptoms related to the left middle finger result in functional impairment.
(c.) For each diagnosis or symptoms that result in functional impairment, is it at least as likely as not (i.e. a probability of 50 percent or more) that the Veteran’s left middle finger condition had its onset during active service or within one year of separation from service, or, otherwise resulted from active military service? 
The examiner should provide a complete rationale for all opinions provided. 
5. After the aforementioned development is complete, schedule the Veteran for a VA examination to assess the present nature and severity of his right knee sprain. A complete copy of the claims file must be made available to the examiner. The examiner must consider the Veteran’s lay reports of observable symptomatology. The examiner must also take a history regarding the symptoms from the Veteran. After a thorough review of the medical and lay evidence of record, the examiner should address the following:
(a.) Describe the present nature and severity of the Veteran’s right knee sprain, including, but not limited to: active, passive and weight-bearing range of motion measurements, measurements of pain on motion, and range of motion measurements for opposing joints, if possible.
(b.) Provide a description of functional impairments, if any, caused by the right knee disability. 
(c.) If possible, provide a retrospective opinion regarding the severity of the Veteran’s right knee disability since discharge from service, including consideration of functional impairment or heightened symptomatology during flare ups or after repetitive use, if any.
The examiner should provide a complete rationale for all opinions provided. 

 
H. SEESEL
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Department of Veterans Affairs