﻿Citation Nr: AXXXXXXXX
Decision Date: 01/07/19 Archive Date: 01/07/19

DOCKET NO. 181116-883
DATE: January 7, 2019

ORDER

Entitlement to service connection for schizoaffective disorder, alternatively diagnosed as bipolar disorder, is granted.

FINDINGS OF FACT

1. Resolving reasonable doubt in his favor, the Veteran’s schizophrenic reaction manifested within one year of discharge from service.

2. Resolving reasonable doubt in his favor, the Veteran’s current schizoaffective disorder, alternative diagnosed as bipolar disorder, is etiologically related to the schizophrenic reaction that manifested within one year of discharge from service. 

CONCLUSION OF LAW

The criteria for service connection for schizoaffective disorder, alternatively diagnosed as bipolar disorder, are met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018). 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from December 1965 to July 1967 in the United States Navy. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the November 2018 RAMP rating decision considered the evidence of record prior to the issuance of the August 2018 rating decision. The Veteran timely appealed that RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

In the November 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for a psychiatric disorder. The AOJ also found that the Veteran had a diagnosis of schizophrenic reaction during hospitalization from September 6, 1968, to December 16, 1968, and that there was a current diagnosis of schizoaffective disorder. The Board is bound by those favorable findings. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

Service Connection – Psychiatric Disorder 

In this case, the Veteran is service-connected for posttraumatic stress disorder (PTSD). He maintains that his schizoaffective disorder, which has been alternatively diagnosed as bipolar disorder, manifested during active service or within one year of discharge from active service.

The Veteran’s service treatment records are unremarkable for any complaints, treatment, or diagnoses related to a psychiatric disorder. At his December 1965 enlistment examination and July 1967 discharge examination, his psychiatric condition was noted as normal. The Veteran was discharged from service in July 1967.

VA treatment records indicated that the Veteran was admitted to the hospital in June 1968 for complaints of high blood pressure. Past history and review of systems were essentially unremarkable. He was seen in consultation by Psychiatric Service and it was believed that he had a severe personality disorder and mal-adjustment, which may have led to his physiologic response of hypertension. A personality evaluation described the Veteran as a severely disturbed young man in serious danger of plunging into a full-blown psychotic state. He was acutely aware of his own confusion and of his intermittent but more frequent perceptual distortion of reality. Further treatment was recommended and it was noted that without those steps, the Veteran was in grave danger of a psychotic break. 

VA treatment records dated in September 1968 indicated that he went AWOL twice during his previous hospitalization and was discharged in August 1968. He returned on September 3, 1968, and stated that he wanted to see a social worker and a doctor to talk about his problems. The initial impression was character disorder – passive aggressive type. On September 6, 1968, it was noted that he was mentally alert, but somewhat confused and out of reach. It was also noted that he had inadequate focal adjustment, felt persecuted, and liked to be left alone. He showed flattened affect with pronounced thought blocking, psychomotor slowing and delusional ideas such as receiving static electric shocks and experiencing “blackouts” which he stated he got while fully conscious. He showed a mild paranoid overlay with ideas of reference and stated that people talked behind his back. It was noted that he served in the Navy and that he was apparently discharged on the recommendation of a psychiatrist. The impression was schizophrenic reaction, acute, undifferentiated type. 

Later records dated in the 1970s indicated that the Veteran was diagnosed with various personality disorders, schizophrenic reaction, schizophrenia (schizoaffective type), and depressive disorder. A September 1982 VA examiner indicated that there was no definite diagnosis and that the Veteran most likely suffered from depression with paranoid episodes. Later records also indicated a diagnosis of PTSD and bipolar affective disorder. 

A VA examination was conducted in November 1998. The report of that examination provided a thorough, detailed review of the Veteran’s psychiatric history. The examination also included psychological testing. The examiner noted that the Veteran had a long and complex psychiatric history and a tendency to exaggerate his symptom severity; however, the examiner stated that it was clear that the Veteran had exhibited severe psychiatric symptoms dating back to within one year after his discharge from the Navy, and potentially during his military service. The examiner noted that a May 1967 letter from a Navy district legal officer to the Veteran’s mother indicated that arrangement had been made to obtain psychiatric evaluation of him. The examiner opined that the Veteran’s psychiatric condition was best characterized as bipolar I disorder with psychotic features, noting that he had consistently exhibited affective symptoms throughout the course of psychiatric history, at times accompanied by symptoms of psychosis. It was noted that recently his psychotic symptoms had been relatively well controlled with antipsychotic medications. The examiner opined that bipolar disorder appeared to be long-standing and severe, potentially present prior to his military service, but definitely present within one year following his discharge as suggested by the significant levels anxiety and irritability that prompted his visit to the VA hospital in June 1968 and referral for psychiatric evaluation. The examiner also opined that it was likely that this military service exacerbated the condition, as suggested by the May 1967 letter by a Navy district legal officer to the Veteran’s mother. 

A VA examination was also conducted in August 2016 for the purposes of determining the severity of the Veteran’s service-connected PTSD. The examiner indicated that the Veteran did not meet the criteria for PTSD, but did meet the criteria for a personality disorder. She also noted that the Veteran had a history of psychiatric hospitalizations for paranoia and depressed mood that had been conceptualized as schizoaffective disorder. She opined that the Veteran’s schizoaffective disorder was less likely than not related to his military service, but did not provide any rationale for that opinion.

In August 2018, the AOJ obtained a medical opinion from a different VA examiner. That examiner did not examine the Veteran, but provided a detailed review of the claims file. She opined that the claimed condition was less likely than not incurred in or caused by military service. She noted that the Veteran had a personality disorder that appeared to preexist service and that his behavioral and disciplinary difficulties during service were consistent with his pre-existing personality disorder. She noted that his first contact with mental health after discharge was during a hospitalization for hypertension in June 1968. She also noted that a record indicated that he was in danger of plunging into a full-blown psychotic state, but stated that this conclusion was not made by the psychiatrist who had evaluated him on the unit in the same time frame. She indicated that the final diagnosis was passive aggressive personality disorder. She further noted when he was hospitalized in September 1968, his presentation was markedly different with flattened affect, thought blocking, psychomotor slowing, delusional ideas, and paranoia. She stated that he was diagnosed with schizophrenic reaction and that this was the first diagnosis of a psychotic disorder. Ultimately, the examiner based her opinion on the fact that the Veteran was not diagnosed with a psychotic disorder until after the one-year period following discharge from service and that those symptoms were different from what had been seen previously. 

In this case, the November 1998 and August 2018 VA examiners’ opinions included a thorough discussion of the evidence and rationale. The essential question is whether the Veteran’s psychotic disorder manifested within one year of discharge. Although the August 2018 VA examiner indicated that the Veteran’s symptoms manifested in September 1968 and that those symptoms were markedly different from what he had exhibited before, a review of the June 1968 hospitalization records noted that he was confused, that he exhibited intermittent distortion of reality, and it was noted that he was in danger of a full-blown psychotic break. Very little time elapsed between his August 1968 discharge from the hospital and the September 1968 admission that led to his diagnosis of schizophrenic reaction. 

Therefore, the Board finds that the evidence is at least in equipoise. Resolving reasonable doubt in his favor, the Board finds that the schizophrenic reaction manifested within one year of discharge from service. Therefore, it is presumed to have been incurred in or aggravated by service. See 38 C.F.R. §§ 3.307, 3.309.

The next question is whether the Veteran’s current schizoaffective disorder, alternatively diagnosed as bipolar disorder, is related to the schizophrenic reaction that occurred in 1968. The Board notes that with a chronic disease shown in service or within the presumptive period under 38 C.F.R. 3.307, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). 

As psychoses are considered to be chronic diseases for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In this case, the evidence indicates that the Veteran has had long-standing psychiatric problems since discharge from service, including schizoaffective disorder, which is considered a psychosis. See 38 C.F.R. § 3.384. 

Based on the foregoing, the Board finds that the evidence for and against the claim of entitlement to service connection for schizoaffective disorder/bipolar disorder is at least in equipoise. Resolving reasonable doubt in the claimant’s favor, the Board finds that service connection for schizoaffective disorder/bipolar disorder is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

Regarding the Veteran’s personality disorder, the Board notes that personality disorders are not diseases or injuries within the meaning of applicable legislation providing VA compensation benefits. 38 C.F.R. §§ 3.303(c), 4.9, 4.127. Although service connection may be granted for disability due to a superimposed disease or injury, this has not been shown in this case. 

 

Kristin Haddock

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD S. Mishalanie, Counsel