Citation Nr: 1730418 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-02 232 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Honolulu, Hawaii


THE ISSUE

Entitlement to service connection for obstructive sleep apnea.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

L. Silverblatt, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from September 1980 to September 2000.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. Jurisdiction of this appeal was subsequently transferred to the Honolulu, Hawaii RO.

The Veteran testified at a videoconference hearing in April 2017 before the undersigned Veterans Law Judge. A transcript of the proceeding has been associated with the electronic claims file. 

In April 2017, the Veteran waived initial RO consideration of new evidence submitted in conjunction with his claim. 38 C.F.R. § 20.1304(c) (2016).

This matter was remanded by the Board in March 2016 for additional development. The matter is now back before the Board.


FINDING OF FACT

Resolving all doubt in the Veteran's favor, obstructive sleep apnea is etiologically related to his period of active service.


CONCLUSION OF LAW

The criteria for entitlement to service connection for obstructive sleep apnea have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. 
§§ 3.102, 3.159, 3.303 (2016).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA's duties to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). In light of the favorable decision herein as to the issue on appeal, the Board finds that any deficiencies in notice were not prejudicial to the Veteran.

II. Merits of the Claim

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

An alternative method of establishing the second and third elements of service connection for those disabilities identified as a "chronic condition" under 38 C.F.R. § 3.309(a) is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). A claimant can establish continuity of symptomatology with competent evidence showing: (1) that a condition was "noted" during service; (2) post-service continuity of the same symptomatology; and (3) a nexus between a current disability and the post-service symptomatology. 38 C.F.R. § 3.303(b). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).
Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

The Veteran contends that service connection is warranted for his obstructive sleep apnea. At the April 2017 Board hearing, the Veteran testified that he was unaware of sleep apnea during his military service and did not recognize his symptoms of loud snoring, feeling drowsy, and dozing off at the wheel as symptoms of a medical condition. The Veteran testified that that his symptoms worsened after he left service and he was diagnosed with sleep apnea in 2005. See April 2017 Board hearing transcript. The Veteran asserts that his sleep apnea is attributable to his military service. 

Service treatment records reflect that the Veteran complained of poor sleep and fatigue in January 2000.

In August 2005, the Veteran attended a group orientation related to sleep disorders. His answers to a questionnaire indicated a high likelihood of sleep disordered breathing and he was scheduled for a sleep study in September 2009, which resulted in a diagnosis of obstructive sleep apnea. Continuous positive airway pressure (CPAP) therapy was recommended.

In support of his claim, the Veteran submitted a statement in October 2008 stating that for most of his military career, it was standard for him to work a combination of rotating shifts, swing shifts, and mid-shifts depending on his assignment. At times, he supported 24/7 operations and worked extensive hours. 

The Veteran also submitted a buddy statement from his wife in October 2008. His wife stated that her husband had been a chronic snorer with apneic episodes since as early as 1991. His snoring continuously disrupted both their sleeps. His wife stated that his symptoms worsened over the years and at her insistence, the Veteran finally sought medical attention after his retirement from service. 

In February 2009, after review of the Veteran's claims file, a VA examiner opined that the Veteran's sleep apnea was not at least as likely as not related to his service. The examiner indicated that the January 2000 service treatment record noting the Veteran's reports of fatigue and poor sleep also noted a diagnosis of an upper respiratory infection. The note failed to specify the duration of his symptoms and whether they were related to the upper respiratory infection. The examiner further noted that the Veteran's sleep study had been conducted as a part of a group orientation with a sleep questionnaire, and not because the Veteran was concerned with fatigue, sleep apnea, or snoring. Finally, the examiner noted the Veteran's increasing weight over the years and, combined with the absence of upper airway structural abnormalities noted in medical records, determined that the main risk factor for the Veteran's sleep apnea was his weight. 

In July 2012 and July 2013 private treatment records, Dr. A. G. found that the Veteran was a Mallampati class II with a high arched hard palate and lateral palatal narrowing of the soft palate. Further, examination of the internal nose revealed obstructive left turninates and a sniff test was positive for obstruction on the left. At the time of these examinations, the Veteran weighed 182 lbs. and 181 lbs., respectively. 

In January 2016, the Veteran underwent a CPAP titration study. A CPAP of 6 cm H20 appeared necessary and sufficient to eliminate most obstructive sleep-disordered breathing. At the time of the study, the Veteran weighed 155 lbs. 
In a December 2016 statement, the Veteran asserted that the February 2009 VA examiner based his opinion on incorrect and faulty information. The Veteran indicated that the August 2005 orientation and September 2005 sleep study he underwent was due to the referral of his primary physician, after he expressed complaints of daytime fatigue, loud snoring, and episodes of breathing difficulty in a June 2005 visit. The Veteran further asserted that while the VA examiner noted a lack of structural abnormalities, both the July 2012 and July 2013 private treatment records noted Mallampati class II with a high arched hard palate, lateral palatal narrowing of the soft palate, obstructive left turninates, and positive for obstruction on the left. Finally, contrary to the examiner's opinion that weight was a risk factor, the Veteran directed attention to the January 2016 CPAP titration study and noted that his sleep apnea was still in effect at 155 lbs.

The Board finds the Veteran's statements, as well as the submitted statements from his wife regarding the onset and continuation of his sleep symptoms, to be credible. The Veteran and his wife are competent to describe the circumstances surrounding his in-service snoring and sleep disturbances, because such actions come to them through their senses and, as such, require only personal knowledge rather than medical expertise. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (a Veteran is competent to report symptoms that require only personal knowledge, not medical expertise, as they come to him through his senses). See also Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006) (lay evidence, for example, the Veteran's contentions in the present case does not lack credibility simply because it is unaccompanied by contemporaneous medical evidence). Furthermore, the statements from the Veteran's wife are consistent with the Veteran's statements and testimony throughout the course of the appeal. As such, the Board finds that the requirement that there have been an in-service injury or event has been met. Additionally, the current treatment records clearly document that the Veteran has a current diagnosis of sleep apnea. 

The Board further finds that the Veteran has provided competent and credible evidence that he has had continuous symptoms of sleep apnea since his discharge from active duty service, and the Board finds no reason to question the veracity of such statements. During the 2017 Board hearing, the Veteran testified that he did not seek medical help for his sleep apnea because he did not recognize that the symptoms were indicative of a medical condition. The Veteran has also provided evidence that, contrary to the February 2009 VA examiner's report, the Veteran does have upper airway structural abnormalities and that his weight does not seem to be the cause of his sleep apnea, as his sleep disorder exists at both fit and heavy weights. 

Given the competent and credible statements of record asserting symptoms of sleep apnea since service, and resolving any reasonable doubt in favor of the Veteran, the Board finds that the criteria for service connection for obstructive sleep apnea have been met. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Service connection for sleep apnea is granted.





____________________________________________
KRISTI L. GUNN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs