﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/26/19

DOCKET NO. 181005-979
DATE: August 27, 2019

ORDER

Entitlement to service connection for bilateral hearing loss is granted.

Entitlement to service connection for bilateral toenail fungus is denied.

Entitlement to service connection for diabetes mellitus is denied.

Entitlement to service connection for erectile dysfunction is denied.

Entitlement to service connection for hypertension is denied.

Entitlement to service connection for scar residual of right breast surgery is granted.

Entitlement to service connection for a right knee arthritis resulting in total knee replacement is denied.

FINDINGS OF FACT

1. Resolving reasonable doubt in the Veteran’s favor, his bilateral hearing loss is due to noise exposure in service.

2. The preponderance of the evidence of record is against finding that the Veteran has had bilateral toenail fungus at any time during or approximate to the pendency of the claim.

3. The Veteran’s diabetes mellitus was not noted in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology, and is not otherwise related to active service.

4. The record does not contain a medical assessment of erectile dysfunction. The Veteran’s erectile dysfunction was not noted in service and is not otherwise related to active service.

5. The preponderance of the evidence of record is against finding that the Veteran has had hypertension at any time during or approximate to the pendency of the claim.

6. The Veteran underwent surgery in October 1975 for removal of tissue from his right breast. The Veteran has a current scar as a residual of this surgery.

7. The Veteran’s right knee osteoarthritis, with subsequent total right knee replacement, was not noted in service, did not manifest to a compensable degree within one year of separation or demonstrate continuity of symptomatology, and is not otherwise related to active service.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss are met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303, 3.385 (2018).

2. The criteria for service connection for bilateral toenail fungus are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303. 

3. The criteria for service connection for diabetes mellitus are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for service connection for erectile dysfunction are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

6. The criteria for service connection for a scar residual from right breast surgery are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

7. The criteria for service connection for right knee arthritis resulting in total right knee replacement are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served in the U.S. Marine Corps from April 1972 to October 1976.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in May 2018. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

SERVICE CONNECTION

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303 (a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection for certain diseases (including arthritis, hypertension, and diabetes mellitus) may also be established on a presumptive basis by showing that such a disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of such disease during the period of service. 38 C.F.R. § 3.307(a). The Board notes however, that in this case, there is no medical evidence of record showing a diagnosis of arthritis or diabetes within one year of service, and no current diagnosis of hypertension; therefore, service connection on a presumptive basis would not be warranted for these issues.

An alternative method of establishing the second and third elements of service connection for those disabilities identified as a “chronic condition” under 38 C.F.R. § 3.309 (a) is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). A claimant can establish continuity of symptomatology with competent evidence showing: (1) that a condition was “noted” during service; (2) post-service continuity of the same symptomatology; and (3) a nexus between a current disability and the post-service symptomatology. 38 C.F.R. § 3.303 (b). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

To deny a claim for benefits on its merits, the preponderance of the evidence must be against the claim. See Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990) (“A veteran need only demonstrate that there is an ‘approximate balance of positive and negative evidence’ to prevail.”).

The Board must determine the value of all evidence submitted, including lay and medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

1. Entitlement to service connection for bilateral hearing loss 

The Veteran contends that his current hearing loss is a result of his military service. The Board notes that the RO has granted entitlement to service connection for tinnitus as due to military service. The RO did not make a finding related to noise exposure in the October 2015 rating decision which granted entitlement to service connection for tinnitus. Additionally, the August 2018 higher level review rating decision did not make a finding related to noise exposure in denying entitlement to service connection for bilateral hearing loss.

The Veteran has not provided any lay statements or argument related to his claims on appeal, other than to indicate that they should be service connected.

The Veteran’s DD 214 lists his military occupational specialty (MOS) as a Refueler. His service personnel records show he served as a heavy vehicle operator, refueler, and motor vehicle operator. These MOS have a moderate probability of exposure to hazardous noise; as such, exposure to hazardous noise in service is conceded.

Hearing loss will be considered to be a disability when the auditory threshold in any of the frequencies from 500, 1000, 2000, 3000 or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 2000, 3000 or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran’s service treatment records include his April 1972 entrance medical evaluation with the following Audiogram findings in ISO:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 20 15 10 X 10 

LEFT 20 20 15 X 10 

As such, the Veteran entered service with hearing that did not meet VA’s standards for a hearing loss disability under 38 C.F.R. § 3.385

Additionally, the Veteran was provided size large ear plugs in April 1972.

An August 1972 Audiogram in ISO standards included the following:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 35 25 35 30 35 

LEFT 20 20 15 15 15 

Based on this test, the Veteran has right ear hearing loss disability for VA purposes in his right ear within four months of service.

The Veteran’s service treatment records also include an April 1976 extension medical examination with the following Audiogram results in ISO:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 5 10 5 10 

LEFT 10 10 15 10 15 

This test shows improvement in bilateral hearing as compared to the 1972 evaluations.

In November 1976, the Veteran underwent a separation medical evaluation with the following Audiogram results in ISO:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 10 10 10 5 

LEFT 10 15 20 15 20 

Again, this result shows an improvement in bilateral hearing as compared to the 1972 evaluations.

In October 2015, the Veteran was afforded a VA audio examination. The examination showed that he had bilateral hearing loss disability for VA purposes. He was diagnosed with bilateral sensorineural hearing loss. The examiner reviewed the Veteran’s treatment records and noted that the Veteran had normal hearing thresholds from 500 to 6000 Hz at both enlistment (1972) and during an April 1976 evaluation. The examiner provided a negative nexus opinion which noted that the Veteran’s MOS was as a refueler, and the Veteran stated he did not use hearing protection. The examiner noted that this MOS had “a probability of hazardous noise exposure. However, hearing was within normal limits at enlistment and separation without any significant threshold shifts bilaterally. Therefore, the current hearing loss is less likely than not related to military noise exposure.” During the examination, the Veteran reported he served 4.5 years from April 1972 to November 1976, and that he “participated in combat activity.” He stated that he worked in motor transport and fired weapons with his right hand. He did not use hearing protection and was not in a hearing conservation program. The Veteran reported the onset of tinnitus in 1975 while working in the flight line. The examiner provided a positive nexus opinion for the Veteran’s tinnitus due to his military noise exposure from jet engines and helicopters.

Given that the Veteran has current bilateral hearing loss, VA concedes his exposure to hazardous noise in service, he is already service-connected for tinnitus, and an August 1972 in-service audiogram showed right ear hearing loss disability for VA purposes, the Board is going to resolve reasonable doubt in the Veteran’s favor and finds that his current bilateral hearing loss is due to his military service. The Board notes that his service personnel records and DD 214 do not include and awards or details that support his assertion that he had combat experience. Although the audio examiner noted the Veteran’s assertion of combat experience, the Veteran selected “no” related to combat exposure on his initial claim form. 

2. Entitlement to service connection for bilateral toenail fungus

The Veteran has filed a claim of entitlement to service connection for bilateral toenail fungus.

A review of his service treatment records does nots how that he was treated for a toenail fungus in service.

A review of available medical evidence, both provided by the Veteran and through VA treatment records, does not show a current diagnosis of a bilateral toenail fungus.

As there is no evidence of an in-service injury or disease, or evidence of a current disability, entitlement to service connection for a bilateral toenail fungus is not warranted.

3. Entitlement to service connection for diabetes mellitus

The Veteran contends that his current diabetes mellitus was caused by his military service. The Veteran has not provided any statements or arguments to support his contention. The Board notes that although the Veteran served during the Vietnam era, there is no indication in his service personnel records that he served in the Republic of Vietnam or surrounding countries where Agent Orange was sprayed.

Limited VA treatment records show that the Veteran has been diagnosed with diabetes mellitus. A July 2014 VA treatment record noted that the Veteran was compliant with diet and exercise related to his diabetes mellitus diagnosis. It also noted a family history of diabetes mellitus via the Veteran’s mother. The record included that the Veteran was “previously a heavy drinker, sober two years.” The July 2014 record noted that the Veteran was establishing care with VA. He did not provide any private treatment records which may have indicated when his diabetes mellitus was initially diagnosed.

The Veteran’s service treatment records do not include a diagnosis of diabetes mellitus. His November 1976 separation medical evaluation included a urinalysis negative for sugar and albumin. 

The Veteran was not afforded a VA examination in connection with this claim. VA must provide an examination when there is competent evidence of a disability that may be associated with an in-service event, injury, or disease, or with a service connected disability, but there is insufficient information to make a decision on the claim. 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159 (c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). Here, there is no evidence of an in-service injury and the Veteran is not competent to diagnose diabetes mellitus, nor has he indicated he had any symptoms in service that were later associated with his diagnosis of diabetes mellitus. There is no indication that the Veteran was exposed to herbicides in service, and he has not made any statements related to Agent Orange or service in the Republic of Vietnam or surrounding countries. As such, the Veteran’s claim of entitlement ot service connection for diabetes mellitus did not meet the threshold of McLendon, and VA’s duty to assist did not include providing a VA examination.

As there is no evidence of in-service diagnosis of, or treatment for, diabetes mellitus, no evidence that the Veteran’s diabetes mellitus began to a compensable degree within one year of discharge from service, and no medical opinion linking his current diabetes to service, entitlement to service connection for diabetes mellitus is not warranted.

4. Entitlement to service connection for erectile dysfunction

The Veteran has filed a claim of entitlement to service connection for erectile dysfunction. He has not provided any statements or arguments in support of this claim.

The Veteran is competent to self-assess impotence. He has not provided a statement on when his impotence began.

The Veteran’s service treatment records do not include assessment of erectile dysfunction or complaints related to impotence.

The Veteran’s available post-service treatment records do not include complaints of or diagnosis related to erectile dysfunction.

As the Veteran’s impotence/erectile dysfunction was not noted in service, and he provided no statements or arguments related to onset, he did not meet the standards of McLendon and was not afforded a VA examination in connection with this claim. The Board notes that the Veteran has been diagnosed with diabetes mellitus, but it is not a service-connected disability. 

Given that the record does not contain an assessment of erectile dysfunction in service or post-service, entitlement to service connection for erectile dysfunction is not warranted.

5. Entitlement to service connection for hypertension

The Veteran has filed a claim of entitlement to service connection for hypertension or high blood pressure. He has not provided any argument or statements to explain his theory of entitlement. The Veteran is not competent to diagnose hypertension.

The Veteran’s service treatment records do not include a diagnosis of hypertension or notation of high blood pressure. 

The Veteran’s limited post-service treatment records do not include a diagnosis of hypertension or a notation of high blood pressure. Limited blood pressure readings post-service included 129/84 and 129/84.

The Veteran’s claim of entitlement to service connection for hypertension must be denied as there is no evidence of a current disability.

6. Entitlement to service connection for scar residual of right breast surgery

The Veteran has filed a claim of entitlement to service connection for “right breast contusion/surgery.”

Service treatment records from October 1975 show that the Veteran had right breast pain associated with discharge and swelling. He underwent a right subcutaneous mastectomy on October 21, 1975. He was to have light duty for one week, then return to have his stiches removed. There were no other records related to his right breast gynecomasty after the removal surgery. His November 1976 separation medical examination included a notation of a two-inch scar on his right “LB.” It is unclear what “LB” stands for, but possibly lower breast.

The Veteran was afforded a VA examination in July 2015. He was noted to have a history of right breast gynecomastia and to have undergone a right subcutaneous mastectomy in October 1975. The examiner marked that the Veteran underwent breast surgery without significant alteration of the size of the right breast. The Veteran had a scar, which was not painful or unstable, and was not of a size greater than 39 sq. cm. It was described as a 2 cm x 2 cm infra-areolar swelling of the right breast that was smooth, without discreet masses. The postoperative course was benign. The scar was lateral and inferior to the areola and C-shaped, flat, smooth, and barely visible. The Veteran also reported occasional episodes of chest cramping when doing manual labor. The examiner referred his chest cramping to his VA physician for discussion. The examiner found that there was no current diagnosis of contusion and the surgery was “performed decades ago without any problems or late effects.” 

Although the VA examiner did not diagnose a current right breast diagnosis, she did indicate that the Veteran has a scar as a result of his in-service surgery. As the Veteran underwent surgery during service, in October 1975, and he has a residual of a right breast scar, service connection for residuals of right breast surgery (scar) is warranted.

7. Entitlement to service connection for a right knee arthritis resulting in total knee replacement

The Veteran filed a claim of entitlement to service connection for right knee arthritis and right total knee replacement. The Board has condensed the claim as above. As with his other claims, the Veteran and his representative have provided no arguments or statements which provide a theory of entitlement for service connection.

The Veteran’s service treatment records do not include any complaints related to the knee joint or a diagnosis of arthritis. In May 1973, the Veteran received a “dressing” for a knee abrasion (cut) that had occurred three days prior. He received no additional treatment for his knee. His April 1976 and November 1976 medical examinations included normal evaluation of his right knee. 

Post-service treatment records are limited. The Veteran provided a copy of private treatment records for his right knee. He underwent right total knee replacement on February 28, 2014 due to severe osteoarthritis. The records included the February 2014 operation report and two follow-up treatment records from March and May 2014. There are no right knee treatment records prior to the February 2018 total knee replacement. The private treatment records do not include a notation of the history of right knee pain, to include onset, or initial assessment of arthritis. 

The Veteran’s limited VA treatment records include a July 2014 record where he was establishing VA care. At that time, he reported he was status post total right knee replacement from February 2014 with improved pain and ongoing physical therapy.

The Veteran was not afforded a VA examination in conjunction with his claim of entitlement to service connection for right knee arthritis with knee replacement. His service treatment records did not include complaints related to or treatment for a joint injury. He had a skin injury (abrasion) to his right knee, without follow-up treatment care and with a normal knee evaluation in 1976. Although he has a current right knee disability, there was no evidence tending to link his current right knee disability with service, to include no arguments or theories of entitlement by the Veteran or his representative. The earliest post-service treatment records are from 2014, and do not include a link to service. As such, the Veteran’s right knee claim did not meet McLendon standards, and VA’s duty to assist through a VA examination was not triggered.

As noted above presumptive service connection for arthritis as a chronic disease is not warranted in this case as the record does not contain evidence of compensable arthritis within a year of discharge from service. Post-service treatment records begin in 2014 and do not include any information about the onset of the Veteran’s symptoms or when his arthritis was initially diagnosed. The record does not contain x-rays that showed arthritis prior to the right knee arthroplasty. 

As the Veteran was not diagnosed with or treated for a right knee joint disorder or injury in service, there is no indication of compensable arthritis within one year of discharge, and there is no competent evidence linking severe osteoarthritis in 2014 to the Veteran’s service, entitlement to service connection for right knee arthritis resulting in a total knee replacement is not warranted.

 

KRISTI L. GUNN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M.H. Stubbs, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.