﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/31/19

DOCKET NO. 190829-27140
DATE: December 31, 2019

ORDER

Entitlement to service connection for diabetes mellitus type II (diabetes mellitus), to include as due to herbicide agent exposure, is denied.

Entitlement to service connection for prostate cancer, including residuals, to include as due to herbicide agent exposure, is denied.

Entitlement to service connection for a liver condition, claimed as secondary to prostate cancer, including residuals, is denied.

FINDINGS OF FACT

1. Diabetes mellitus was not manifested in service or within the first post service year, and the preponderance of the evidence is against a finding that the Veteran’s current diabetes mellitus is related to an event, injury, or disease in service, including herbicide agent exposure. 

2. Prostate cancer, including residuals, was not manifested in service or within the first post service year, and the preponderance of the evidence is against a finding that the Veteran’s current prostate cancer is related to an event, injury, or disease in service, including herbicide agent exposure. 

3. A liver condition cannot be service-connected on a secondary basis as a matter of law and the preponderance of the evidence is against finding that it began during active service or is otherwise related to an in-service injury or disease.

CONCLUSIONS OF LAW

1. The criteria for establishing service connection for diabetes mellitus, to include as due to herbicide agent exposure, have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309. 

2. The criteria for establishing service connection for prostate cancer, including residuals, to include as due to herbicide agent exposure, have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309. 

3. The criteria for establishing service connection for a liver condition, claimed as secondary to diabetes mellitus, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from May 1965 to May 1967.

By way of history, the Veteran filed a claim for entitlement to service connection for diabetes mellitus, prostate cancer and a liver condition secondary to prostate cancer in January 2019 under the modernized review system which was denied in an April 2019 rating decision. 38 C.F.R. § 19.2(d). Following the denial, the Veteran filed a Decision Review Request: Supplemental Claim in May 2019. 84 Fed. Reg., 138, 177 (January 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The new claim for benefits was considered and remained denied in a June 2019 rating decision. The Veteran timely appealed the June 2019 rating decision to the Board and requested the evidence submission reviewed by a Veterans Law Judge. This selection entitles the Veteran to submit additional evidence in support of his appeal within 90 days of the notice of disagreement. The Veteran’s additional evidence was received in September 2019 and is considered herein.

Service Connection 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection generally requires evidence satisfying three criteria: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (“nexus”) between the present disability and the disease or injury incurred or aggravated during service. Walker v. Shinseki, 708 F.3d 1331, 1333 (Fed. Cir. 2013).

Secondary service connection is warranted where a disability is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Briefly, the threshold legal requirements for a successful secondary service connection claim are: (1) Evidence of a current disability for which secondary service connection is sought; (2) a disability for which service connection has been established; and (3) competent evidence of a nexus between the two.

Certain chronic diseases, which are listed in 38 C.F.R. § 3.309(a), including arteriosclerosis and diabetes mellitus, may be presumed to have been incurred during service if manifested to a compensable degree within one year of separation from active service. 38 U.S.C. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

With chronic disease shown as such in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. Id. However, if chronicity in service is not established or where the diagnosis of chronicity may be legitimately questioned, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b). A claimant “can benefit from continuity of symptomatology to establish service connection in the ultimate sense, but only if [the] chronic disease is one listed in § 3.309(a).” Walker, 708 F.3d at 1337. Service connection may nonetheless be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

1. Entitlement to service connection for diabetes mellitus type II and prostate cancer, including residuals, to include as due to herbicide agent exposure

The Veteran seeks entitlement to service connection for diabetes mellitus and prostate cancer, including residuals, as due to exposure to herbicide agents during his military service.

The Veteran’s service treatment records (STRs), to include his March 1967 service separation report of medical examination, are silent for any complaints, findings, treatment, or diagnoses of diabetes mellitus or prostate cancer. See STR. Instead, his post service VA treatment records show that the Veteran’s claimed disabilities were diagnosed many years after his separation from active duty service.

Based on the foregoing information, there is no evidence that the Veteran’s current diabetes mellitus and prostate cancer had their onset in service. There is also no indication that the Veteran’s diabetes mellitus or prostate cancer manifested to a compensable degree in the first year following his separation from active duty service. Consequently, service connection for these disabilities on the basis that such became manifest in service and persisted, or on a presumptive basis (as a chronic disease under 38 U.S.C. § 1112), is not warranted. Notably, the Veteran has not alleged (nor has he submitted competent evidence to show) that he has suffered from these disabilities continuously since service. See 38 C.F.R. § 3.303(b). Rather, it is the Veteran’s contention that his diabetes mellitus and prostate cancer are the result of exposure to herbicide agents in service.

VA regulations provide that certain diseases associated with exposure to herbicide agents may be presumed to have been incurred in service even if there is no evidence of the disease in service, provided the requirements of 38 C.F.R. § 3.307(a)(6) are met. 38 C.F.R. § 3.309(e). Both diabetes mellitus and prostate cancer are among the diseases presumed to be associated with exposure to certain herbicide agents. Id. 

Therefore, the critical question to be resolved in this case is whether the Veteran was exposed to herbicide agents in service. 

The Veteran’s service personnel records do not show that he had service in the Republic of Vietnam or its offshore waters, the Republic of Korea, or Thailand. The Veteran does not claim that he served in any of these locations either. Instead, he contends he was exposed to herbicide agents as a medical specialist who received wounded soldiers arriving directly from the Republic of Vietnam. See August 2019 Decision Review Request: Board Appeal. Specifically, it is asserted that by serving as a medical specialist he was exposed to “many soldiers who still had the residue of Agent Orange about their person and the helicopters as well”. It was further asserted that “[w]hen the doors of the helicopter were opened, there were clouds of dust that hovered over the lawn and if the [V]eteran had to complete this task multiple times daily, then cross contamination would surely occur.” See September 2019 Statement in Support of the Claim.

In support of this contention, the Veteran submitted an excerpt from the U.S. Army Medical Department, Office of Medical History which describes hospitalization and evacuation procedures. See September 2019 Correspondence.

While the Board acknowledges the Veteran’s lay statements about his current disabilities and their etiology, including linking it to in-service experiences where he believes he was exposed to herbicide agents, the Board cannot accept these statements or the excerpt he provided from the U.S. Army Medical Department, Office of Medical History as probative evidence of such exposure. Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 C.F.R. §§ 3.303(a), 3.159(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). However, a determination of whether the Veteran was exposed to any specific herbicide agents by receiving soldiers from the Republic of Vietnam, and whether any such tangential exposure would suffice to cause the Veteran’s current disabilities, requires specialized training/knowledge and is not capable of resolution by lay observation. Similarly, the Veteran has not demonstrated that he has any firsthand knowledge that the “clouds of dust” he recalls hovering over the lawn when the helicopter doors were opened, in fact, contained residue or particles from herbicide agents. In essence, the Veteran’s allegation of second-hand exposure to herbicide agents from soldiers returning from the Republic of Vietnam is conjecture and is not supported by any objective or competent evidence.

To the extent the Veteran also claims he may have been exposed to herbicide agents through contact with C-123 airplanes (see May 2019 Correspondence), it is acknowledged that effective June 19, 2015, VA amended its regulation governing individuals presumed to have been exposed to certain herbicide agents by expanding the regulation to include an additional group consisting of individuals who performed service in the Air Force or Air Force Reserve under circumstances in which they had regular and repeated contact with C-123 aircraft known to have been used to spray an herbicide agent (“Agent Orange”) during the Vietnam era. Specifically, the new regulation states that an individual who performed service in the Air Force or Air Force Reserve under circumstances in which the individual concerned regularly and repeatedly operated, maintained, or served onboard C-123 aircraft known to have been used to spray an herbicide agent during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent.

For the purposes of this paragraph, “regularly and repeatedly operated, maintained, or served onboard C-123 aircraft” means that the individual was assigned to an Air Force or Air Force Reserve squadron when the squadron was permanently assigned one of the affected aircraft and the individual had an Air Force Specialty Code (AFSC) indicating duties as a flight, ground maintenance, or medical crew member on such aircraft. 38 C.F.R. § 3.307(a)(6)(v). For this reason, the presumption of herbicide exposure under 38 C.F.R. § 3.307(a)(6)(v) is limited to contact with C-123 aircrafts known to have been used to spray an herbicide agent during the Vietnam era.

In this case, the Veteran served in the Army, not the Air Force, and he has not alleged (nor does the evidence show) that he worked with C-123s. In fact, he has not asserted that he worked with any aircrafts. Rather, as discussed above, he made a general assertion that he was exposed to herbicide agents from receiving wounded soldiers as a medical specialist after they returned directly from the Republic of Vietnam. Thus, from the record, it cannot be said that the Veteran served in a capacity that would have put in him “regular and repeated contact” with an aircraft exposed to herbicide agents, to include Agent Orange.

Having determined that there is no competent evidence to support a finding that the Veteran was exposed to any herbicide agents in service, including Agent Orange, the Board concludes that the preponderance of the evidence is against a finding that the Veteran’s diabetes mellitus and prostate cancer, including its residuals, are in any way related to his service. Accordingly, the service connection claims are denied.

2. Entitlement to service connection for a liver condition, claimed as secondary to prostate cancer, including residuals

The Veteran contends he has a liver condition that has been aggravated by his prostate cancer, including the residuals thereof. As addressed above, however, the Board has denied the Veteran’s claim for service connection for prostate cancer. As the Veteran is not service-connected for prostate cancer, which is one of the necessary elements to establish a successful secondary service connection claim, the Board must deny service connection for a liver condition as secondary to prostate cancer, including its residuals, as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

The Veteran has not asserted nor does the evidence suggest that his liver condition was present in service, or is otherwise related to service. As such, consideration of service connection on a direct basis is not warranted. 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. Churchwell, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.