Citation Nr: AXXXXXXXX
Decision Date: 09/29/21 Archive Date: 09/29/21

DOCKET NO. 190418-18477
DATE: September 29, 2021

ORDER

Entitlement to service connection for ovarian cyst, residuals of a hysterectomy, and scarring is granted. 

Entitlement to service connection for a back condition is denied. 

Entitlement to service connection for tinnitus is denied. 

Entitlement to service connection for a right foot condition is denied.

Entitlement to service connection for a left foot condition is denied.

FINDINGS OF FACT

1. There is a relative equal balance of competent and credible evidence for and against a finding that the Veteran's ovarian cyst; residuals of a hysterectomy; and scarring were caused by an in-service injury, event or disease, or caused or aggravated by a service-connected disability.

2. The weight of the competent and credible evidence is against finding that the Veteran's back condition manifested in service or within one year of service; and were caused by an in-service injury, event, or disease.

3. Tinnitus was not manifest in service or within one year of separation from service and was not otherwise caused by the Veteran's active service.

4. The weight of the competent and credible evidence is against finding that the Veteran's right foot condition manifested in service and is caused by an in-service, injury, or disease.

5. The weight of the competent and credible evidence is against finding that the Veteran's left foot condition manifested in service and is caused by an in-service, injury or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for ovarian cyst, residuals of a hysterectomy, and scarring have been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.309 (2020).

2. The criteria for service connection for a back condition have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.309 (2020).

3. The criteria for entitlement to service connection for tinnitus have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.385 (2020). 

4. The criteria for service connection for a right foot disability have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.309 (2020).

5. The criteria for service connection for a left foot disability have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.309 (2020).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from April 1981 to April 1984.

These matters come before the Board of Veterans' Appeals (Board) from an April 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

In April 2019, the Veteran filed a Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182) and elected a hearing before a member of the Board. Under this option, the Board reviews the claims based on the evidence of record at the time of the prior rating, and evidence received within 90 days following the hearing. 38 C.F.R. § 20.303. 

The Veteran testified at a virtual Board hearing before the undersigned Veterans Law Judge in April 2021. A transcript of the hearing has been associated with the claims file.

Service Connection

A Veteran is entitled to VA disability compensation if there is a disability resulting from personal injury suffered or disease contracted in line of duty in active service, or for aggravation of a preexisting injury suffered or disease contracted in line of duty in active service. 38 U.S.C. §§ 1110, 1131. To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service" - the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 Fed. Cir. (2004).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b). Service connection for a recognized chronic disease can also be established through continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (2013); 38 C.F.R. §§ 3.303 (b), 3.309.

Following active duty, the Veteran received care at a military clinic as a dependent spouse. Some post-service records are filed with service treatment records (STRs). 

Ovarian Cyst, Hysterectomy, and Scarring

The Veteran contends that her ovarian cyst incurred in, was caused by, or aggravated by active duty service. 

In a September 1981 service treatment record (STR), a clinician noted the Veteran had a negative pap smear, finding granulocytes. See March 2018 STR, p.5. 

In a September 1982 and October 1983 VA treatment records, the Veteran underwent a gynecological examination. A specimen was taken from her cervix and the examination came back negative. See March 2018 STR, p.1,6. 

In a September 1984, the Veteran was seen at a private emergency room for lower abdominal pain upon wakening. The Veteran stated that she had a previous episode of the symptom. The clinician ruled out (R/O) pelvic inflammatory disease (P.I.D.) but noted an early pregnancy that was ectopic. See March 2018 STR, p.5. The clinician diagnosed abdominal pain with an unknown etiology but doubtful pelvic inflammatory disease from ectopic pregnancy. The clinician indicated that the Veteran had improved upon release. The clinician also instructed the Veteran to call for results of her pregnancy test and return if pain increased or a fever developed. See March 2018 STR, p.5,7. 

In a discharge physical examination, the Veteran denied on-going gynecological problems. 

After active duty in April 1986, an ultrasound of the pelvis showed a normal uterus with hyperechoic areas consistent with fibroids. The evaluator noted that pelvic inflammatory disease "may well be present." Ovaries were unremarkable. 

In October 1986, the Veteran underwent exploratory surgery to investigate infertility. The attending physician noted the Veteran's report of good health but having undergone a laparotomy for lower abdominal pain one month earlier and was found to have endometriosis and had implants removed.

In a June 1992 imaging report, the Veteran was afforded an ultrasound examination of her pelvis. The examiner found that there was slight enlargement of the uterus and a small cyst on the Veteran's right ovary. See March 2018 Medical Treatment Record-Non-Government Facility, p.10.

In a September 1992 private treatment record, a clinician noted that the Veteran had irregular spotting between menstrual cycles, her menstruation was heavy, and she had severe cramping. The Veteran underwent a pap smear and mammogram. The Veteran diagnosed with endometriosis and a cyst. See March 2018 Medical Treatment Record-Non-Government Facility, p.1. 

In another September 1992 private treatment record, the Veteran complained of spotting between her cycle and indicated cramp pain was rated at a 10. See March 2018 Medical Treatment Record-Non-Government Facility, p.4. 

In a December 1993 private treatment record, the Veteran underwent a pap smear; the results were normal. See March 2018 Medical Treatment Record-Non-Government Facility, p.6. 

In a February 1994 treatment record, the Veteran's pap smear was normal. However, it was later noted that the Veteran's specimen had to be retested due to being decertified by the national certifying organizations. See March 2018 Medical Treatment Record-Non-Government Facility, p.1, 7. 

In an August 1998 private treatment record, the Veteran underwent a private pap smear. The Veteran had a past history of endometriosis, anemia secondary to dysfunctional uterine bleeding and dysfunctional uterine bleeding. On examination, external genitalia were unremarkable, and the cervix was clearly visualized. There was no cervical tenderness or masses on examination. The Veteran was diagnosed with dysfunctional uterine bleeding. See March 2018 Medical Treatment Record-Non-Government Facility, p.1-3. 

In an October 2005 VA treatment note, a clinician noted fibroid tumors/ polycystic ovaries which had been within normal limits as of that July (7/05). The clinician also noted the Veteran had hysteroscopic surgery three times and partial left ovariectomy. See February 2018 Capri, p.132. 

In March 2014, the Veteran had a total abdominal hysterectomy. See May 2018 Medical Treatment Record-Non-Government Facility. 

In a September 2017 VA treatment record, a clinician noted that the Veteran had been diagnosed with fibromyalgia, GER, had had a hysterectomy and right ovarian neoplasm. See February 2018 Capri, p.32. 

In October 2018, the Veteran was afforded a gynecological VA examination. The examiner reviewed the claims file; considered the subjective accounts and conducted an evaluation. The examiner noted that the Veteran had a total hysterectomy; ovarian cyst that had resolved, and endometriosis. The Veteran also had a resolved uterine fibroid and a resolved menometrorrhagia. The examiner found that it was less likely than not the claimed gynecology condition incurred in or was caused by an in-service gynecological issue. The rationale was that during service the Veteran did have a follicular abcess, but it resolved. Also, the Veteran had lower abdominal pain, but she denied having been treated for a female disorder and denied having a change in her menstrual cycle at separation. The examiner also noted that the Veteran had multiple gynecological complaints after service but there was no evidence of them during service. The examiner noted a review of a letter from Dr. G.A.Z. but did not explain his disagreement with the finding. 

In April 2021, the Veteran attended a virtual hearing. The Veteran stated while in-service she had continuous gynecological issues. She indicated that she went to sick call or to the emergency room several times due to severe pain. The Veteran sated that one time she went for treatment and it was noted she had an ectopic pregnancy, but she was never told this by the physician. Since that time, she stated that she had severe menstrual cramps when she would be in severe pain for the first two or three days of her cycle. For the pain she took medication; used heating pads and was usually bedridden. After service she was seen by a gynecologist who tried to figure out what was causing the pain. The Veteran testified that her continued problems caused infertility. She testified that she went through years of treatment, which ended with physicians being unable to figure out how the Veteran could conceive. The Veteran testified that she had severe pain due to what she believed to be the scarring from the ectopic pregnancy. The Veteran testified that she had to have several surgeries to remove fibroid cysts that had grown. The Veteran indicated that eventually after years, she had to have a full hysterectomy. The Veteran stated that she brought her records to her current gynecologist and he believed that the previous issues the Veteran had in-service contributed to her condition and hysterectomy. The Veteran testified after her full hysterectomy, she had a neoplasm of uncertain behavior and they did not know if it was cancerous, so she had to go see an oncology surgeon. The growth was the size of a grapefruit and she had it removed. See April 2021 Hearing Transcript, p.3-4. 

After the hearing, the Veteran submitted additional documents including records of care on active duty, care after service from 1992 to 2012 a military clinic and private providers that show the history of care during that time. She also included a timeline and citations to treatment encounters. There was also another copy of an undated letter from Dr. G.A.Z from a private clinic in Houston Texas that had been part of the documents marked as service treatment records. The physician noted a review of medical records provided by the Veteran from her care during active duty and thereafter from 1981 to 1987. The physician found that the notations in records two to three years after active duty included abdominal pain, infertility, endometrioses, and eutopic pregnancy that more than likely started during her time in the military and resulted in scarring and having a total hysterectomy of the uterus, cervix fallopian tubes and a bilateral salpingo-oophorectomy. The physician noted that the Veteran continued to have complications and scaring requiring additional surgery. 

The Veteran contends that the residuals from her in-service gynecological issues were incurred in, aggravated by, or otherwise attributable to, service. However, as a lay person, she lacks the specialized medical training and expertise in the fields of podiatry, gynecology, and/or urology to render diagnoses, etiological opinions, or theories of medical proximate causation. See Jandreau, supra.

The Board finds that there is a relative equal balance of weight for and against service connection for ovarian cyst and subsequent hysterectomy and scarring. The Board assigns t probative weight to the VA examination and opinion, as discussed above. The physician reviewed the claims file; considered the Veteran's reports and conducted an evaluation. Moreover, the examiner rendered an opinion based in evidence and medical information. The Board also assigns weigh to the finding of Dr. G.A.Z. although there was little rationale to support a summary of the history of treatment. The Board recognizes that some clinical comments suggested that the Veteran's in-service abdominal pain; heavy bleeding and gynecological issues contributed to her current diagnosis, but these comments do not show that the in-service events are directly related to her current diagnosis. The Veteran denied having any female changes or menstrual changes at separation. As to the respective etiology of the Veteran's condition, the examiner provided a negative nexus opinion as to direct service connection. The Board also places weight on the VA clinical records that show symptoms and treatment for ovarian cysts; heavy periods; infertility; her diagnosis of endometriosis and abdominal pain before her total hysterectomy. 

Therefore, as there is a relatively equal balance of evidence, service connection for ovarian cyst, hysterectomy, and scarring is granted. See 38 U.S.C. § 5107 (b); Gilbert, supra.

Back Condition

The Veteran contends that service connection is warranted for a back disability. The Veteran reports that her ongoing back pain is related to service and that she has had ongoing symptomology since service.

The question for the Board is whether the Veteran has a back disability that began during service, manifested during the applicable presumptive period, or is at least as likely as not caused by an in-service injury or disease.

The Veteran has a diagnosis of degenerative arthritis of the spine with bilateral lower extremity radiculopathy.

The Veteran's service treatment records (STRs) have been associated with the claims file. In September 1982, the Veteran sought treatment for pain in the lower right quadrant of the back for the past day with increased frequency of urination and urgency. The clinician diagnosed possible urinary infection, ordered a culture taken, and prescribed a course of antibiotic medication. There was no mention of a lifting injury or association with back muscles or spine and no follow up. 

In a January 1984 report of medical examination at discharge, the clinical evaluation revealed normal lower and upper extremities. See March 2018 STR, p.6. In a January 1984 report of medical history, the Veteran denied recurrent back pain. See June 2010 Medical Treatment Record-Government Facility, p.2.

After active duty in January 1985, the Veteran was seen for low back pain. In an emergency care report, the Veteran reported that the pain started four days earlier with no recent injury. In another record, she reported that it occurred for several months that had worsened. The clinician indicated that the Veteran stated there was no recent injury or tenderness. The clinician diagnosed soft tissue strain and a heel lift to adjust posture. Veteran was given an ice massage, placed on bed rest, and was getting physical therapy. There was further investigation of the cervical spine not relevant to the lower spine claim. See June 2021 Medical Treatment Record-Government Facility, p.3. 

Also in January 1985, the Veteran was seen at a physical therapy clinic. She complained of left sided low back pain. Later, in the same month the Veteran was seen again for complaints of left sided back pain. See June 2021 STR, p.4. 

In an October 2005 VA treatment note, a clinician noted that the Veteran complained of a mild back ache that had been present for 1 year. The Veteran reported that the pain had progressively worsened. The Veteran had been seen by a neurologist and rheumatologist. There were concerns for polymyositis. See February 2018 Capri, p.140. 

In November 2008 the Veteran underwent a magnetic reasoning imaging (MRI) study. The Veteran was diagnosed with cervical spine pain. The cervical spine showed no acute fractures and alignment appeared normal. There was mild degenerative disk disease at C5-C6 and from C6-C7. There was also mild arthritis. See May 2021 Medical Treatment Record-Government Facility, p.6. 

In a November 2011 VA treatment record, a clinician noted that the Veteran limitation of range of motion of the neck was mild along the myofascial region. And the Veteran's limitation of range of motion of the back was mild and tender to palpation along the lateral lower back. See February 2018 Capri, p.90. 

In July 2013, a magnetic resonance image of the lower spine showed disc bulging on multiple levels. 

In January 2018, a private physician the results of July 2017 MRI and recommended home exercise and injections. There was no mention of the past history or origin of the disability. 

In October 2018, the Veteran was afforded a back VA examination. The examiner reviewed the claims file; considered the subjective accounts and conducted an evaluation. The examiner found the Veteran's degenerative arthritis of the spine and bilateral lower extremity lumbar radiculopathy were less likely than not incurred in or caused by her low back pain during service because her records do show treatment for a lumbosacral strain in January 1985 (nine months after active duty) but there was no mention of back problems on active duty, and during her separation examination she denied any back problems. The examiner indicated that there was no nexus to service. 

In April 2021, the Veteran attended a virtual Board hearing. The Veteran testified that while in-service she sought treatment for back pain due to carrying heavy equipment. The Veteran stated that she had been seen by a back specialist and had received injections in her neck for the pain. The Veteran stated that her rheumatologist had been recommending she tried to walk with a cane, because it became debilitating to stand for long periods of time. The Veteran stated that she received treatment during service and her back condition was from C3 to C7. The Veteran testified that she had been doing physical therapy and aquatic therapy. She stated the pain was sometimes so bad that she ended up bedridden. She testified that she had spasms in her back, where her back would stiffen up. The Veteran indicated that she had to wear a back brace and at work had an ergonomic chair and an adjustable desk, since she could not sit for long periods of time. See April 2021 Hearing Transcript, p.8. 

After consideration of all the evidence of record the Board finds that the weight of the evidence is against finding that service connection for a back disability is warranted. The Board concludes that service connection for a back disability on a direct basis is not warranted as the Veteran's current low back disability was not caused by service. While the Veteran reports that her current back disability is generally related to service and an in-service injury the record does not reflect that he has the requisite training or expertise to offer a medical opinion linking a current disability to service and as such the Veteran is not competent to provide a nexus opinion in this case. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

The Board finds that the medical evidence is more probative and credible than the lay opinions of record. The competent medical evidence including specifically the VA examination in October 2018 is entitled to significant probative weight. The examiner noted a thorough review of the Veteran's claims file including prior opinions, lay statements, and treatment in-service and since. The Veteran has a diagnosis of degenerative arthritis of the spine with bilateral lower extremity radiculopathy. The examiner found that it is less likely than not that the Veteran's current back arthritis was incurred in or caused by the claimed in-service injury, event, or illness. The examiner noted that while the Veteran's STRs do document a back strain in-service, records did not note any objective finding or residual of a chronic back condition. Further at separation the Veteran did not report any back problems. 

As such the Board finds that the Veteran's current back disability is less likely than not related to active service.

The Board finds that direct service connection is not warranted as the Veteran's current low back disability was not onset in or caused by service. The Board notes that in January 1984 the Veteran denied recurrent back pain and the clinical evaluation revealed normal upper and lower extremities. The Board has considered the Veteran's lay statements and testimony however, the Board gives more probative weight to the competent medical evidence especially the October 2018 VA examination. As such the Board finds that the Veteran's current back disability is less likely than not caused by active service.

As to presumptive service connection the Veteran's degenerative arthritis of the spine did not manifest until years post-service. The Board concludes that while the Veteran has arthritis, which falls within a chronic disease under 38 U.S.C. § 1101(3)/38 C.F.R. § 3.309(a), however such was not chronic in service nor did it manifest to a compensable degree in service or within the presumptive period, and continuity of symptomatology is not established. The Veteran's arthritis was not noted during service or within one year of separation. See Walker, 708 F.3d 1331. Service records do not support an onset of the Veteran's arthritis in active service. Based on the probative evidence of record the Board finds that the Veteran's arthritis did not manifest within the one-year period after service and service connection is not warranted on a presumptive basis. In addition, in weighing the evidence of record the Board finds the competent and credible evidence of record is against finding continuity of symptomatology. As a result, service connection based on continuity of symptomology is not warranted.

Tinnitus

The Veteran contends that her tinnitus incurred in, was caused by, or aggravated by active duty service. 

In a January 1984 report of medical evaluation, the Veteran's ears and drums were normal. See June 2010 Medical Treatment Record-Government Facility, p.6. 

In a January 1984 report of medical history, the Veteran denied ever having hearing loss and there was no mention of tinnitus. See June 2010 Medical Treatment Record-Government Facility, p.2

In March 2018, the Veteran was afforded a hearing loss and tinnitus VA examination. The examiner reviewed the Veteran's claims file; considered her subject accounts; and conducted an evaluation. Puretone thresholds showed hearing acuity that did not meet the criteria for disability, but speech discrimination scores were 90 percent bilaterally that do mee the criteria. The examiner noted that the Veteran served in the Army from 1981 to 1984 with a military occupation specialty as an administrative specialist, which had a low probability of noise, and the Veteran had normal hearing at entrance and exit with no significant threshold shifts. On examination, the examiner found that the Veteran had normal hearing in both ears. 

 In the tinnitus portion of the examination, the Veteran reported that onset began in 30 years earlier (1988), which was 4 years after she left service. The Veteran reported that tinnitus impacted her ordinary conditions of daily life because it would wake her up and at times was painful. The Board acknowledges that the Veteran gave contradictory testimony during her Board hearing she testified that the ringing in her ears began during service after a grenade exploded while she was in basic training. The Veteran stated she experienced intermittent ringing bilaterally, which occurred 2-3 times a month and lasted for 30-40 minutes. There was no mention of the grenade incident, which is discussed in more detail below. The examiner found that it was less likely than not tinnitus was caused by or the result of military noise exposure; because there was no significant permanent shift in thresholds while the Veteran was in-service. The examiner further stated the Veteran's medical records for silent for tinnitus in-service and research did not support late onset of noise-induced tinnitus. 

In the Veteran's April 2021 virtual hearing, she testified that during basic training a fellow soldier, while training in a foxhole with grenades the soldier pulled the pin on a grenade. The Veteran's drill sergeant took the grenade from the fellow soldier and threw it and the grenade exploded. After the incident, the Veteran stated that she had ringing in her ears and had pain in her ear canal. She also stated that she suffered from vertigo and ringing in her ear. The Veteran testified that it got so bad that she would throw up; was really dizzy and she could not function. The Veteran indicated that she had documents from her time in-service, where she had treatment. The Veteran stated she was on medication for vertigo and would have to take one to two days off for vertigo episodes that usually lasted a several days. The first couple of days, she stated she could not function because movement, like getting in a car aggravated her, which met she could not travel to her place of work. See April 2021 Hearing Transcript, p.6. 

After consideration of all the evidence of record, the Board finds that the weight of competent and credible evidence is against finding that service connection for tinnitus is warranted. The Board concludes that service connection is not warranted as the Veteran's tinnitus did not begin during service and is not attributable to service. The Board has considered the Veteran's contentions regarding the etiology of her tinnitus including that she experienced ringing after the grenade accident; however, the record does not reflect that she had the requisite training or expertise to offer a medical opinion linking a current disability to service decades earlier and he is not competent to provide a nexus opinion in this case. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The weight of evidence does not support that any temporary ringing continued as a chronic disability during service. 

When she attended her VA examination, she explicitly reported that her symptoms had started in 1988, which was after service. In addition, in her April 2021 testimony she contradicted her examination statements indicating her tinnitus began during an in-service grenade explosion. Furthermore, there is no other evidence of record of the alleged event. There is no competent opinion of record relating the Veteran's tinnitus to her service. After consideration of all the evidence of record the Board finds that the evidence is against finding that service connection for the Veteran's tinnitus disability is warranted. The Board concludes that service connection is not warranted on a direct basis as the Veteran's current tinnitus was not caused by service. The Veteran's reports of the onset of her tinnitus in-service warrant low credible and probative weight as they are not consistent with the STRs at discharge from active duty when clinical evaluation of the ears was normal, and she made contradictory statements regarding its onset. 

The Board finds that the medical evidence is more probative and credible than the lay opinion of record. The Board gives more probative weight to the competent medical evidence, specifically the October 2018 VA opinion, which found that the Veteran's current tinnitus was less likely than not incurred in or caused by service and provided a thorough analysis and rationale. The Board finds the October 2018 VA opinion is entitled to significant probative weight, as it is based on a review of the entirety of the record and is more probative and credible than the lay opinion of record. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

In addition, the Board concludes that, while the Veteran has tinnitus, which is a chronic disease under 38 U.S.C. § 1101 (3)/38 C.F.R. § § 3.309(a), they were not chronic in service or manifest to a compensable degree in service or within a presumptive period, and continuity of symptomatology is not established. Neither tinnitus nor a bilateral hearing loss disability was "noted" during service or within one year of separation. See Walker, 708 F.3d 1331. Based on the probative evidence of record the Board finds that the Veteran's hearing loss did not manifest within the one-year period after service and service connection is not warranted on a presumptive basis. As a result, service connection based on continuity of symptomology is not warranted.

As such, the Board finds that service connection for tinnitus is not warranted. Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990); 38 C.F.R. § § 3.102. For these reasons, the claim is denied.

Left and Right Feet

The Veteran contends that service connection is warranted for a right and left foot disabilities. The Veteran reports that in service she was diagnosed with corns. The Veteran is competent to describe her current symptoms, in-service events, and the occurrence of ongoing symptoms, and to this extent, these statements are credible. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The question for the Board is whether the Veteran has a right and left foot disability that began during service or is at least as likely as not caused by an in service injury, event or disease.

The Veteran has a current diagnosis of bilateral hammertoes and left foot degenerative arthritis.

The Veteran' service treatment records (STR's) are associated with the claims file. In a July 1982 STR, a clinician noted that the Veteran had corns bilaterally. See March 2018 STR, p.6. 

In a January 1984 STR, a clinician indicated that the Veteran had corns on both feet. See March 2018 STR, p.2.

In a January 1984 report of medical examination, the clinical evaluation revealed abnormal feet. See June 2010 Medical Treatment Record- Government Facility, p.6. The examiner noted that the problem was corns. In a January 1984 report of medical history, the Veteran reported that she had great health and that at the time or in the past she had foot trouble. See June 2010 Medical Treatment Record-Government Facility, p.2.

In November 1990 the Veteran had surgery on her feet, including to surgically remove a corn on the 2nd digit of the right foot. See March 2018 Medical Treatment Record-Non-Government Facility, p.2. 

In a November 2011 VA treatment record, a clinician indicated that there was no deformity of the Veteran's feet and her toes had no tenderness to palpation (TTP). See February 2018 Capri, p.90. 

In October 2018, the Veteran was afforded a foot conditions VA examination. The examiner reviewed the claims file; considered the subjective accounts and conducted an evaluation. The examiner indicated the Veteran had a diagnosis of bilateral hammertoes and left foot degenerative arthritis. The Veteran reported that while in-service she began to develop pain in her toes. The Veteran stated that she sought medical treatment and was diagnosed with corns. After service the Veteran underwent surgery on her bilateral third toes for hammer toes. The Veteran indicated that her condition had worsened and at the time she was experiencing aching to sharp pain and stated that she was unable to wear certain shoes without experiencing pain. The Veteran reported being unable to stand or walk for long periods of time. The Veteran did not use assistive devices. The condition impacted the Veteran's ability to work; because she was limited in running; jumping; prolonged ambulation; prolonged standing and high impact activities. The examiner found that the Veteran's feet condition was less likely than not incurred in or caused by the in-service corn. The examiner noted that the service records showed that the Veteran had corns on her bilateral feet and on the separation exam it was noted that she had corns on her feet, and it was noted that in 1990 the Veteran had bilateral third toe hammertoe surgery. The examiner indicated that although hammertoes can lead to corns, there was no mention of hammertoes in her service treatment records. The Veteran had a diagnosis of hammertoes, but it could not be determined as being related to her in-service corns. 

In April 2021, the Veteran attended a Board hearing. The Veteran testified that she went to sick call several times for pain with her feet and had been recommended that she get better fitting footwear, that she never received. The Veteran noted that wearing the same footwear and when she got out of service her corns were worse. The Veteran further testified that she believed she was told she had hammertoes and immediately after had to have surgery on both feet. And it was hard for her to wear footwear without severe pain. At the time of the hearing, the Veteran testified that she had to wear inserts in her shoes. The Veteran indicated that she usually wore gel soles and corrective footwear. See April 2021 Hearing Transcript, p.9. 

VA and private treatment records have been associated with the claims file. A review of these records shows that the Veteran made ongoing reports of foot pain. These treatment records do not contradict the VA examination and are absent indications that the Veteran's current foot conditions are related to her in-service diagnosis of corns. 

After consideration of all the evidence of record the Board finds that the evidence is against finding that service connection for the Veteran's right foot and left foot disabilities is warranted. The Board concludes that service connection for right foot and left foot hammer toes or left foot degenerative arthritis is not warranted on a direct basis as the Veteran's right foot and left disability is not caused by service. 

While the Veteran reports that her bilateral foot conditions are related to service the record does not reflect that she has the requisite training or expertise to offer a medical opinion linking a current disability to service decades earlier and as such the Veteran is not competent to provide a nexus opinion in this case. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

The Board finds that the medical evidence is more probative and credible than the lay opinions of record. The competent medical evidence of record includes the VA examination in October 2018 which is entitled to significant probative weight. The VA examiner noted bilateral hammertoes and left foot degenerative arthritis. The examiner found that the Veteran's foot condition was less likely than not incurred in or caused by the in-service corns. The examiner noted that the service records showed that the Veteran had corns on her bilateral feet and on the separation exam it was noted that she had corns on her feet, and it was noted that in 1990 the Veteran had bilateral third toe hammertoe surgery. The examiner indicated that although hammertoes can lead to corns, there was no mention of hammertoes in her service treatment records. The Veteran had a diagnosis of hammertoes, but it could not be determined as being related to her in-service corns. The Board finds that the opinion is entitled to probative weight as the opinion was based on an adequate rationale and is not contradicted by other opinions.

The Board finds that service connection is not warranted as the Veteran's current right and left foot hammer toes or her left foot degenerative arthritis is not related to service. The Board notes that STRs note in January 1984 on the report of medical examination clinical evaluation the Veteran had abnormal feet and had bilateral corns. The Board has thoroughly considered the Veteran's lay statements however, the Board gives more probative weight to the competent medical evidence. Further, the Board gives significant probative weight to the October 2018 VA examination. As such the Board finds that the Veteran's current foot conditions are less likely than not related to active service. Since the weight of competent and credible evidence is against the claims, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 5557 (1990); 38 C.F.R. § 3.102. For these reasons, the claims are denied.

 

 

J.W. FRANCIS

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board E. Long-Ellis, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.